SOMMERVILLE, J.'
Plaintiff, alleging that its right of way on the front of defendant’s plantation has been encroached upon and destroyed by the levee board for the purpose of building a levee along the banks of the river, and that it is necessary for the purposes of carrying on its business to connect its line of rails which come up to either side of defendant’s.plantation, seeks to expropriate a piece of ground 3,410 feet in length by 60 feet in width, and containing 4.79 acres, which is described in its petition; and it asks for judgment condemning said strip of land for a sum to be fixed by a jury in the district court.
Defendant answered, setting up that the right of way sought to be expropriated- by plaintiff was unnecessary for its railroad purposes, and that some other route than the one indicated could be used by plaintiff with less inconvenience and loss to defendant, and praying that if the right of way should be granted, plaintiff be condemned to pay her the sum of $11,390, with interest and costs.
There was trial by jury, and a verdict was found, and judgment rendered in favor of plaintiff condemning the land, and in favor of defendant against plaintiff in the sum of $8,475, with interest and costs.
Plaintiff has -appealed, and defendant has answered, asking for an amendment of the judgment, increasing the amount allowed to the sum of $11,091.97, with interest and costs, and that the judgment appealed from be affirmed as amended.
In her answer defendant claims $3,206.50 as the value of the land to be expropriated by plaintiff, and $8,093.50 for damages resulting to her plantation by. reason of the expropriation. A great many questions were argued and submitted in the course of the trial which become unnecessary to consider here for the reason that the defendant has asked for an increase in and an affirmance of the judgment appealed from. We shall confine our discussion to the points of difference between plaintiff and defendant as to the value of the land expropriated, and the value of the damages.
Defendant, in her answer, alleges the ground to be expropriated to be worth $150 per acre, and that other lands have been damaged worth $112.50 per acre. The evidence is conflicting on- this point, and we have fixed the value of the land expropriated at $125 per acre.
[3] The next claim is for $2,000 for “the adaptability of the land” expropriated for *961 railroad purposes. In determining this valuation defendant says:
“The fact that this strip is about 2,000 feet from the present levee, that should now levees be rendered necessary in the future plaintiff will not be compelled to remove its roadbed and tracks for about 25 years to come, and that plaintiff selected this strip with that end in view, adds to the value of this strip because of adaptability for the purposes of plaintiff, and increases its value up to an additional amount of $2,000.”
And the husband of defendant, while on the witness stand, testified as to this item:
“I figure that the land was worth as much for adaptability for railroad purposes in proportion to the number of times the railroad would have to purchase other rights of way had they followed the levee and moved back as the levee moved. In other words, the average distance the levee board and the government have moved their levee is 600 feet at a time, and the fact that the railroad right of way would be 2,000 feet would make it worth at least three times as much for eliminating three consecutive movings, and I made it $2,000 round.”
There is no doubt that some land, because of its condition, or of its position, is better adapted to a particular purpose than other lands.
The ground here sought to be expropriated, as is shown by the evidence, is a small strip through a sugar plantation, which is just like the other ground on that plantation, and that it is specially adapted for sugar planting. That condition fixes the market value. The strip of land sought by the railroad company is no better adapted for railroad purposes than are other portions of that same plantation. It is not shown to be any higher, or dryer, or more level than are the other parts of said plantation. The “adaptability” of the strip for railroad purposes is not shown, and a claim for the value of the “adaptability” of the strip of ground is not based upon any sound or reasonable basis, and it is inequitable. It will not be allowed.
We. disposed of a similar claim in the case of Louisiana Ry. & Nav. Co. v. Sarpy, 125 La. 393, 51 South. 434, where defendants claimed an increase of value for the “adaptability” of the land sought to be expropriated for a factory site, in the following language:
“The evidence does not show that the land in that neighborhood is sought after for factory sites. It may be in the course of time. That is remote, and cannot be considered in forming an estimate of the value of the land at this time. The place is a large farm, and is valued as such.” United States v. Chandler-Dunbar Co., 229 U. S. 53, 80, 33 Sup. Ct. 667, 678 (57 L. Ed. 1063).
[2] In the last-cited case the court say:
“A ‘strategic value’ might be realized by a price fixed by the necessities of one person buying_ from another, free to sell or refuse, as the price suited. But in a condemnation proceeding, the value of the property to the government for its particular use is not a criterion. The owner must be compensated for what is taken from him, but that is done when he is paid its fair market value for all available uses and purposes.”
[1] Mr. Dillon in his work (volume 2, .p. 617) says:
“The inquiry in such cases must be. What is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses? * * * As a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the future.”
The next claim is for $500, because the 4.71 acres expropriated are made up of small portions of land taken from 16 acres. This . claim is based upon what a witness for defendant terms “a premium of selection.” He says in answer to a question:
“I put it ($500) because they were selecting a strip crossing the entire property.” “I would put a premium upon the selection of any strip without regard to the desire of the proprietor; I believe they should pay a premium in some shape for' a strip to suit their desires.”
This claim is without merit. The law is that plaintiff has the right to select an avail *963 able place for its right of way without incurring any penalty for so doing, beyond paying for the property taken at its market value, and for such actual damages as the owner of the land may suffer.
We have allowed $125 per acre for the land expropriated because it is small in area, and is, perhaps, worth more than the testimony showed the larger body of land to be worth.
Defendant next itemizes the damages claimed by her, and she has offered testimony in support of each item. In most instances the testimony is insufficient to sustain the several amounts of alleged damages.
The claim of $100 for loss of cane by reason of a preliminary survey is now admitted by defendant to be worth $42.69.
The claim for first and second year stubble is reduced from $215.76 to $202.27.
[4] The next item is for dividing the plantation into two parts, valued at $1,500. The evidence does not show that this division of the plantation has damaged or will damage the plantation to any appreciable extent. One of defendant’s witnesses testifies that all the plantations he knows anything about are so divided by railroad tracks, and to the advantage of some of them. And this would be so with defendant’s property doubtless if she were not just now using the river for transporting her product of sugar cane to a neighboring mill to be ground. Mr. Frey, the husband of the defendant, and her main witness, testified as to this claim in a very indefinite and uncertain way as follows:
“That is a big element of damage.” “Inasmuch as in going to and back from your work you have to cross the right of way four times a day with your whole outfit, it puts you subject to getting caught in the track, and your hands and mules are liable to be struck by the train when they are crossing and turning loose.” “There was nothing fixed at it [the amount of damage] and I did not want to make it too big, and I had to make up my mind as to what it was worth if a couple of mules were killed, or some implements broken, and I averaged it at $1,500.” “I had to arrive at some conclusion or opinion.”
The evidence is not sufficient to fix the amount of damage, if any, and the claim will not be allowed.
Another disputed claim is for the value of 52 bridges, to contain 28,500 feet of lumber, at $25 per thousand, $708. That is the price of an excellent grade of lumber, which the evidence shows is not used generally in bridge building. The witnesses testify that pecky cypress, at $10 per thousand, is used by most of the planters, and by the parochial authorities in bridge building. This item will be reduced to $285.
The next item is for — ■
“extra expense, wear and tear of mules and carts in crossing embankments without corresponding increase in tonnage hauled, $2,250.00.”
One of defendant’s witnesses testified that this item of damage would amount to $1,200 during the next 10 years. Another one of defendant’s witnesses said:
“I could not fix any price on that.”
And still another:
“I cannot attempt to fix it; however, this is an element of damage.”
A witness for plaintiff testified:
“I don’t think there is hardly any damage if the ramps and crossings are properly graded. I always notice it is harder to get out of head lands than it is to cross the railroad track.”
The evidence is insufficient to sustain this claim.
[5] The other items claimed are small in amounts — for loss of time in going from one cut to another on opposite sides of the railroad track, labor and loss of time because of trains stopping at crossings, depreciation in value of land in view of exposure of crops to fire, and injury from falling of obnoxious seeds from passing trains and the spreading of same over plantation. They will not be allowed.
The testimony with reference to these claims is most indefinite and uncertain. It was not possible for any witness to say how *965 often, trains might stop at the crossings, or what kind of obnoxious seeds might fall from passing trains, or what crops might be burned by fire from passing locomotives, or how much time might be lost in going from one cut in a plantation to another cut across the track. As to the last item, Mr. Frey testified that the loss would amount to $100 for a couple of years until the men and mules became accustomed to going from one cut to another. Defendant claims $200 for this alleged damage. If defendant should lose any portion of her crop because of fire communicated from a passing locomotive the railroad will be responsible for the damages then suffered. It would be the same with reference to the scattering of obnoxious seeds, if the railroad should scatter them. It is impossible to fix such damages in advance.
If the evidence had shown a depreciation in the value of the land along plaintiff’s right of way by reason of danger from fire to improvements or crops, such damage would be allowed. But depreciation of the land is not proved.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount thereof from $8,475 in favor of defendant and against plaintiff, to $3,138.45, with interest and costs of the district court, and, as thus amended, it is affirmed. Appellee to pay costs of appeal.
PROVOSTY, J., absent on account of illness, takes no part.