TEXAS PACIFIC-MISSOURI PACIFIC TER-
MINAL R. R. OF NEW ORLEANS v.
ROUPRICH

———

(April 9, 1928.  Opinion and Decree.)

———

(*Syllabus by the Court*)

1. **Louisiana   Digest—Expropriation—Par.
63, 64.**
   Where the evidence shows that there was
   no market value for the lease, lessee,
   defendant in an expropriation suit, will
   only be allowed the amount which
   the record shows plaintiff had offered.

Appeal from Twenty-fourth Judicial Dis-
trict Court, Parish of Jefferson. Hon. L.
Robert Rivarde, Judge.

Action by Texas Pacific-Missouri Pacific
Terminal Railroad of New Orleans against
Anthony M. Rouprich.

There was judgment for defendant and
plaintiff appealed.

Judgment amended.

John E. Fleury, of New Orleans, attorney
for plaintiff, appellant.

L. H. Gosserand, of New Orleans, attor-
ney for defendant, appellee.

JONES, J.  This is a suit to expropriate
a certain lease on improved real estate
situated in the Town of McDonoghville
in which the defendant operated a grocery
store and lived with his family.

Plaintiff alleges as follows: That it is
engaged in operating a railroad from New
Orleans to Westwego terminating at what
is known as Old Mile Post Nine at which
point it connects with the line of the
Texas & Pacific Railway Company; that it
had a plan of extension to care for the
increase in business coming into the port
of New Orleans and for this purpose de-
sired to expand its yards an additional
1,000 feet south and 340 feet east and
west of its present tracks; that it had
already acquired by lease and by private
purchase in the Town of McDonoghville
various properties for right-of-way and ter-
minal purposes and that it acquired from
Mrs. Caroline Rouprich, widow of Daniel
F. Middleton by virtue of the verdict of
the jury and the judgment of the lower
court rendered in proceedings No. 5646 of
the docket of the lower court and also
by notarial act, the land and the build-
ing located on the land on which the
defendant claims that he has a lease for
the price of ten thousand, seven hundred
($10,700.00) dollars; at the time of the
purchase of this property it discovered
that Mrs. Middleton had leased the prop-
erty with the buildings thereon to the
defendant for a term of three years com-
mencing on the 1st day of October, 1924,
and ending on the 1st day of September,
1927, for a monthly rental of sixty ($60.00)
dollars per month, payable monthly rep-
resented by thirty-six (36) rent notes.

This suit was filed on July 16, 1926,
and the jury's verdict giving defendant
one thousand ($1,000.00) dollars was ren-
dered and the judgment signed on July
30, 1926.

The lease had then fourteen (14) months
to run.

Defendant answered as follows: He had
leased the property for the purpose of op-
erating a grocery store, the store had been

operated by him for about ten years and during the last several years his average income, over and above his expenses, had exceeded three thousand ($3,000:00) dollars; he has used the premises as a domicile for himself and his family and he had established a trade and business, the good will of which would not survive the destruction of this particular place of business; that it would be impossible for him to re-establish the business in any other locality and that the expropriation of his lease would cause him damages and irreparable injury.

Frank J. Tillotson, a notary public and licensed real estate dealer of the Parish of Jefferson, the only witness for plaintiff, testified that he had been in the real estate business for six years; was acquainted with the location of the property in question; that in view of the fact that all of the buildings but one in the square where defendant operates his grocery had been moved, a lease on a building in that locality would not have much value and he was doubtful if he could get ten dollars per months for a lease on defendant's place.

He further testified that nearly all the houses have been and are being moved away from defendant's locality and there wouldn't be anybody to patronize the place; he doesn't think he could get sixty dollars per month for this lease; that as a real estate agent in the face of the fact that all of the houses in the square, surrounding this particular property leased by defendant, from which he could reasonably expect to obtain trade, have either been demolished or removed he would not recommend a lease to anybody under such conditions.

The defendant, Anthony M. Rouprich, the only witness for defendant, testified that he had been in this place ten years; that he used the building for a grocery store and domicile; that he had had no offers for the lease as he didn't want to sell it; he didn't know whether he could sell it or not, nor did he know the market value of the lease.

Defendant attempted to show that he valued the lease at two hundred fifty ($250.00) dollars per month, a total of three thousand ($3,000.00) dollars per year; that he had been operating for ten years, making three thousand dollars per year, all of which was objected to and the objection sustained by the Judge of the lower court and the evidence ordered stricken from the record on the ground that the only question involved was the market value of the lease; that contemplated and prospective profits were not elements to be considered in fixing market value in expropriation proceedings, but only actual damages were to be considered.

The record contains a written offer from plaintiff to pay defendant two hundred ($200.00) dollars for his lease.

It was incumbent on the defendant to prove that the lease at the time of the expropriation had advanced in price, but he has proved only that his lease has no market value.

The only Louisiana case on the subject is reported in 32 La. Ann. 371, entitled "In Re Morgan R. R. & S. S. Co."

In that case certain property was expropriated on which there existed a lease, the monthly rental being sixty ($60.00) dollars, and the commissioners allowed the lessee four thousand twenty ($4,020.00) dollars as the value thereof.

The award of the commissioners was set aside and the lessees were granted

fifteen ($15.00) dollars per month for the unexpired term of the lease, that amount being the difference between what the lessees had to pay monthly and what the lease would sell for. The Supreme Court discussed the question of prospective profits as follows:

"The only true test of this excess of the value of the lease over the stipulated rental or price thereof, is to ascertain what sum the right of lease, leasehold. will bring over and above the rent stipulated to be paid. In the case before us the rental is sixty dollars per month. If the right of lease would sell for seventy-five dollars per month of its term, then the excess of its value over its price is fifteen dollars per month.

"The right of expropriation being a legal one, its exercise does not give rise to any other than actual damages; consequently, damages are not to be considered. The law fixes these actual damages where the whole of a thing or right is taken at the fair value of that thing or right. The fact that the owner or lessee might build a store, or a factory, or warehouse on the lot, and derive large profits from that business would not make those contemplated profits a proper element in fixing its present value. So the fact that the lessees, by keeping a coal yard on the lot, and having free access to the wharf (which they have not, by reason of the privileges accorded to this company by the city) might realize large profits from that business, would not justify us in taking the amount of these prospective and problematical profits as the value of the lease."

See Shreveport, etc., R. R. vs. Hinds, 50 La. Ann. 787, 24 So. 287.

"In expropriation suit market value of the property taken is the test in fixing the value."

See Yaxoo & R. R. vs. Teissier, 134 La. 958, 64 So. 866; Hill vs. Chicago & R. R. 38 La. Ann. 599; New Orleans Pac. R. R. Co. vs. Murrell, 36 La. Ann. 344; Shreveport R. R. vs. Hinds, 50 La. Ann. 781, 24 So. 287.

"A jury in an expropriation case, as in any other case, is the judge of the credibility of the witnesses, and may determine as to the value of the testimony given by such witnesses, respectively; but its verdict like the verdict of any other jury must eventually be predicated upon the law and the evidence, and, where it entirely ignores the evidence, and rests its verdict exclusively upon the opinions of its members, such verdict if manifestly erroneous, as judged by the evidence, will be set aside."

See New Orleans vs. Schroeder, 111 La. 653, 35 So. 800; New Orleans vs. Morgan, 111 La. 851, 35 So. 951; Houston & R. Co. vs. Kansas City & R., 109 La. 581, 33 So. 609; Natchitoches & R. Co. vs. Henry, 109 La. 669, 33 So. 725.

The record in this case clearly shows that there was no evidence before the jury to warrant them, inarbitrarily fixing one thousand ($1,000.00) dollars as the amount that the plaintiff should pay the defendant for his lease. The verdict of the jury and the judgment of the lower court are clearly erroneous. They will be set aside and the lease decreed to be the property of plaintiff as owner of the land by virtue of the expropriation, upon plaintiff's paying to defendant the amount he offered, two hundred ($200.00) dollars.

It is ordered, adjudged and decreed, that the lease held by Anthony M. Rouprich from Mrs. Caroline Middleton, for a term of three years, commencing the 1st day of October, 1924, and ending the last day of September, 1927, for a monthly rental of sixty ($60.00) dollars per month, represented by thirty-six (36) rent notes, payable to the order of Anthony M. Rouprich, and by him endorsed, one of said notes being paid on the 1st day of November, 1924, and one on the 1st day of each and evry succeeding month, with interest at the rate of six (6%) per cent from maturity until paid; which lease is recorded

in Conveyance Book 74, Folio 219, of this Parish, and is on the following described property, to-wit:

"A CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, situated in the City of Gretna, formerly McDonoghville, State of Louisiana, designated as Lot "J" in Square 41, which said Square is bounded by Jefferson, Periander, Adams and Anson Streets, and according to plan made by Frank T. Payne, Civil Engineer, which said plan is annexed to an act of sale from Mrs. Margaret Rouprich, widow of Daniel F. Middleton, passed before F. A. Middleton, Notary Public, on May 30th, 1916, said Lot "J" measures sixty-four (64) feet, four (4) inches and six (6) lines front on Jefferson Street, by a depth of one hundred and fifty-nine (159) feet, ten (10) inches and three (3) lines between parallel lines and front on Periander Streets; as will more fully and clearly appear by reference to plan or sketch annexed hereto and made part hereof, marked 'Exhibit A.'

"Being the same property which was acquired by Mrs. Caroline Rouprich, widow of Daniel Frederick Middleton, by purchase from Mrs. Margaret Rouprich, widow of Henry Berger, et als., by an act passed before F. A. Middleton, a Notary Public, in and for the Parish of Jefferson, on the 30th day of May, 1916; said act being duly registered in the Conveyance Office of the Parish of Jefferson in C. O. B. 38, Folio 428;"

be and it is hereby adjudged to the plaintiff, Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans, for its uses and purposes, upon the payment by it to the defendant, Anthony M. Rouprich, of the sum of two hundred ($200.00) dollars, in accordance with law.

It is further ordered, adjudged and decreed that the plaintiff pay all costs of this suit.