146 So. 1

**LOUISIANA HIGHWAY COMMISSION v. GUIDRY** (two cases).

Nos. 31385, 31426.

Jan. 3, 1933.

Rehearing Denied Jan. 30, 1933.

Lewis L. Morgan and A. S. Cain, Jr., both of New Orleans, for appellants.

Clarence F. Favret and Walter S. Lewis, both of New Orleans, for appellee.

ODOM, J.

These are suits brought by the Louisiana highway commission for the purpose of ac-

quiring, by expropriation, a right of way 150 feet wide across the plantations of these defendants for a state highway known as the "Air Line Road," which connects Baton Rouge and New Orleans. The cases were tried separately in the lower court, but were consolidated for the purpose of argument in this court. We shall consider them together for the reason that the issues in each are the same, the plantations lie adjacent to each other, the same witnesses were called in each case (or practically the same ones), and much of the testimony taken in the one case is pertinent to the issues in the other.

There is no dispute as to the law applicable to the cases, and it appears to be conceded that the trial judge correctly instructed the juries. Defendants admit that the land sought to be expropriated is necessary for the building of the highway, and that plaintiff has the right to acquire it by expropriation proceedings. So that the only questions presented for consideration are the value of the land taken and the damages resulting from the expropriation.

Mr. and Mrs. Guidry, the defendants, are husband and wife. Each owns a part of what is known as the "Terre Haute Plantation," in the parish of St. John the Baptist. Mr. Guidry owns 380 acres and Mrs. Guidry owns 194 acres; the tracts being contiguous. Each tract fronts on the Jefferson Highway, which is adjacent to the levee on the east bank of the Mississippi river. Mrs. Guidry's tract has a frontage on the road or the river of approximately 591 feet, while that of Mr. Guidry has a frontage of approximately 1,445 feet, each tract running back far enough between parallel lines to include the acreage above mentioned (the exact distance not being stated). The track of the L. & A. Railroad runs parallel with the Jefferson Highway or river front and is about 10 arpents back, while the proposed "Air Line Road" will run parallel with the railroad and about 30 arpents from it. We mention this because we think it has some bearing on the issues involved; it being contended, with some force, that defendant's plantations will be cut into small tracts by the building of proposed highway.

These lands are adapted to the growing of cane and corn principally, and are classed as cane lands. The plantations are situated about a mile and a quarter from a sugar refinery owned by the Godchaux Sugars, Inc., which owns and operates what is referred to as a "dummy" line or tram which ends at a point within 500 feet of Mrs. Guidry's land, where there is built a derrick for the loading of cane on the "dummy" cars. Cane produced on these lands is ordinarily sold to Godchaux Sugars, Inc., hauled by the landowners to the derrick, and from there carried over the "dummy" line to the refinery. This line and the derrick are on the river side of the plantation from the proposed new highway. These facts are mentioned for two reasons: First, to show the accessibility of the lands to transportation and a refinery, which has some bearing on their value; and, second, as touching the question of damages caused by cutting the plantations in two, it being shown that the cane produced on the land between the new highway and the woods will have to be carried across the highway to the transportation facilities in order to be marketed.

■ The testimony in each of the cases shows that these plantations are in good state of cultivation, that they are slightly

higher and better soil than the general average of that section, and for these reasons the witnesses, in the main, agree that the land is more valuable than that adjacent to other portions of the road; and it may here be added that Mr. Guidry, who testified in both cases, said that the route selected by the engineers for the highway commission was over the highest and best part of the land. He said there was a ridge forming what he called a "turtle back," and that this was selected for the right of way. We must accept this as true, as neither the lay witnesses nor the engineers disputed him.

With these general observations we pass to a consideration of the specific items claimed by the defendants.

Mrs. Guidry, in her answer, asked for a total award of $4,447.43, which she itemized as follows:

| | |
|---|---:|
| Value of land—2.03 acres at $250.00 per acre | $ 507.50 |
| Value of crops on said 2.03 acres | 175.75 |
| Depreciation of plantation as a whole | 3,000.00 |
| Cost of fencing and gates | 182.75 |
| Cost of enlarging ditches to rearrange drainage | 216.00 |
| Deprivation of use of headland area for planting purposes | 85.00 |
| Value of crops on two headlands to be constructed | 58.00 |
| Removing existing culverts and constructing new headlands on the river side of highway | 35.00 |
| Cost of constructing and locating headland on wood side of highway and of purchasing piping | 187.43 |
| | $4,447.43 |

The jury made the following award:

| | |
|---|---:|
| Value of land | $283.00 |
| Value of crop | 140.00 |
| Cost of headland and piping | 187.43 |
| Total award | $611.03 |

It was agreed by counsel on both sides that the court, in rendering judgment, should supplement the above award by ordering plaintiff to erect and maintain a fence on both sides of the highway along the right of way through the property of defendant and two gates opposite each other for a passageway, and ordering the plaintiff to provide for and maintain adequate drainage through and across the right of way for the purpose of draining defendants' lands; and further supplementing the judgment by adding $35 for removing existing culverts and constructing new headland on the river side of the highway. This eliminates from consideration three items claimed by this defendant amounting in the aggregate to $433.75.

Defendant appealed, and now urges that the award for the land was too low, and that she should have been allowed damages for "Depreciation of plantation as a whole," item 3 of her claim.

It will be noted that the jury awarded Mrs. Guidry $140 for crops destroyed. Referring to her itemized statement, we find that she made two claims, items 2 and 7, for value of crops, one on main right of way and the other on "headlands to be constructed." Apparently the jury considered both items under one, and awarded $140. As her counsel have not complained of that award in their brief, we must assume that she is satisfied as to these items.

Under item 6, she claimed $85 for "Deprivation of use of headland area for planting purposes," for which no allowance was made. This item is not discussed in the brief. On page 6 of the brief it is stated: "The defendant and appellant contends the jury put too low a value on the land expropriated, and that the jury should have allowed $3,000.00 in damages to cover depreciation in value to the rest of the plantation."

From this we understand that the only items we are called upon to consider are the value of the land and the alleged depreciation.

 It is shown that the area sought for the right of way is 2.03 acres. There should be added to this approximately one-third of an acre for a headland along the edge of the right of way made necessary by the building of the road, making the total acreage of which defendant will be deprived about 2.36 acres. For this the jury allowed $283.60, or approximately $120 per acre.

This, we think, was not adequate. The testimony warrants the conclusion that Mrs. Guidry's plantation, as a whole, is worth $100 per acre. That on the river side or front is worth more—that on the wood side is worth less. But $100 per acre is a fair average.

The testimony shows that Mrs. Guidry offered to donate the right of way for the road if located on the rear or edge of the tract, but such location could not be used by plaintiff. It needed higher ground, and that which it selected is the highest and best defendant has. For that reason, and for the further reason that plaintiff seeks to expropriate only a narrow strip, a small acreage running through the middle of the plantation, we must hold that the value of the land sought should be placed considerably higher than the average acreage value of the land as a whole.

Referring now to the testimony of the witnesses as to the value of the land per acre, we find hopeless conflict in the views expressed as well as the opinions as to the value of the plantation as a whole. As to the value of the land to be taken, none of plaintiff's witnesses thought it worth more than $100 per acre and none of them thought the plantation as a whole worth as much as $100 per acre. On the other hand, Mr. Guidry and one other witness valued the strip at $250 per acre, another at $200, and still another at $150. Plaintiff has purchased rights of way for this same highway from at least fifty landowners in that parish, and the highest price paid was $100 per acre. Other prices were as low as $60. These prices do not serve as a criterion, for the reason that all the details as to the kind and location of the land taken are not shown.

As to the value of lands generally in that part of the parish, the witnesses are wide apart in their views. As there have been no sales of plantations in that immediate vicinity within recent years, the witnesses had nothing to guide them. Two sales of small tracts, one of 10 acres to the school board and one of 2½ acres to a church, were made in 1931, at prices considerably above $300 per acre. These were specially selected tracts near Reserve, which is rather a populous settlement with a bank, a post office, a drug store, numerous residences all built up around the sugar refinery. Manifestly these sales cannot serve as a criterion as to the values of land generally. Nor can the sales mentioned

by plaintiff's witnesses, who said that tracts of 40 to 75 acres had been sold several years ago at less than $100 per acre, for the reason that some of them were not in cultivation and were not as good land as defendants'.

The testimony as a whole cannot be harmonized. After reading all of it in both cases, our conclusion is that a fair, reasonable value of the land sought is $150 per acre.

■ Coming now to the question whether Mrs. Guidry's plantation as a whole will be damaged by the building of this highway, we must hold that it will. She has 174 acres in cultivation. The highway severs it in twain, into two tracts, 90 acres on one side and 74 acres on the other. The right of way is to be fenced on each side, with one passageway across the road with two gates. The "dummy" road and the derrick for loading cars already mentioned are on the river side of the road, so that all cane produced on the wood side or on the 74 acre tract must be hauled across the paved highway. The gates must be opened and closed on each trip with a team, and it is shown that 8 to 10 trips a day are made by a team. Mr. Guidry testified that during the grinding season, which covers three to four months of each year, he uses seven or eight teams. He estimated that his drivers would have to stop to open and shut gates almost a hundred times each day, which would consume considerable time. The only way to avoid this, he said, would be to hire an extra hand at $1.25 a day to open and shut the gates. Added to this inconvenience is the danger of encountering the hundreds of automobiles and motortrucks which may be expected to use this prominent road each day.

Considering these inconveniences which result from the cutting of this land in two by the highway, the separating of the plantation into two parts, the witnesses who testified on this point were of the opinion that the market value of the property would be materially decreased by the building of the road. This view seems reasonable to us. A prospective purchaser of the land would naturally take into consideration the fact that, in order to market a cane crop from that part of the land on the wood side of the highway, his laborers and teams would have to pass through the gates and across the road. It is not likely that he would be willing to pay as much for whole acreage cut into tracts with the fences and the road as a barrier between the two as he would if the place were not severed in twain.

■ The plantation will be severed into two tracts as long as the road remains. As the land is valuable only for agricultural purposes, this diminution in value is not only present but prospective, and the property is damaged to the extent of the decrease in value. This damage is part of the compensation which must be paid for the taking of the land.

In expropriation proceedings, the plaintiff must pay, not only the value of the property actually taken, but the damage caused by the taking as well. This is provided for in the Bill of Rights, which says in section 2 that: "Except as otherwise provided in this Constitution, private property shall not be taken or *damaged* except for public purposes and after * * * adequate compensation is paid." (Italics ours.)

In Louisiana Ry. & Nav. Co. v. Sarpy, 125 La. 388, 51 So. 433, it was held that: "Where a railroad cuts a plantation into small parcels * * * and obstructs intercommunica-

tion, it causes damage which it must repair, or for which it must pay."

Similar rulings were made in Vicksburg, S. & P. Ry. Co. v. Dillard (Vicksburg, S. & P. Ry. Co. v. Foster), 35 La. Ann. 1045; New Orleans Pac. Ry. Co. v. Murrell, 36 La. Ann. 344; Payne v. Morgan's L. & T. Ry. Co., 38 La. Ann. 164, 58 Am. Rep. 174; Shreveport & Arkansas Ry. Co. v. Hollingsworth, 42 La. Ann. 749, 7 So. 693.

■ Counsel for the state suggests that mere inconvenience and annoyance caused by the building of the road do not constitute elements of damage. That is true, but, if the inconvenience and annoyance in the use of the property are such as to diminish its market value, the decrease in value is a damage which plaintiff must pay.

Counsel cites the case of Louisiana Highway Commission v. Boudreaux, 19 La. App. 9, 139 So. 521, 523, in support of his theory. In that case the road cut off 1.32 acres from plaintiff's main tract of 20 acres, and the court found that the market value of the part cut off "has been diminished considerably by reason of its insignificant area, and its separation from the main tract. We find that the sum of $65 given for the 1.32 acres of land by the verdict for depreciation is supported by the evidence, and this amount will not be decreased or denied."

■ The only remaining question is the amount of damage. Seventy-four acres of the place on the wood side of the road are in cultivation, and the testimony shows that at present it is worth approximately $100 per acre, or $7,400. Apparently the damage is to this part of the place. Mr. Guidry testified that the damage amounted to $3,000. He also said that the value of the land was decreased by 25 per cent. Others estimated the damage as low as 15 per cent. These estimates seem rather high. We think $1,000 is sufficient for this item.

We here take occasion to say, as we have often said before, that, while jurors in expropriation suits, chosen as they are from among the property owners of the locality where the property sought is situated, are to be considered, in a sense, as experts, and while their verdicts are entitled to consideration and should be given effect, yet the courts frequently find it necessary to set them aside or modify them. These two cases, considered together, present a perfect illustration of that necessity.

■ Mr. and Mrs. Guidry, the defendants, are husband and wife, and own contiguous plantations of precisely the same character as to soil, improvements, and state of cultivation. The value of the land is necessarily the same. Each tract will be severed into two parts by the proposed highway in the same manner. There were two juries, one in each case. These juries heard the same testimony, or practically the same. Yet the jury in Mrs. Guidry's case fixed a value of $120 per acre on the land taken, and allowed her no damages for the severing of her plantation, whereas the jury in Mr. Guidry's case allowed him $200 per acre for the land taken and damages in the sum of $2,220. Manifestly, an egregious error was made by one or the other of these juries. Hence the necessity for the court to use its own judgment and discretion.

■ Under the showing made we think each erred. In Mrs. Guidry's case, the value of the land taken should have been placed at $150 per acre instead of $120, and she should

have been awarded damages in the sum of $1,000. In Mr. Guidry's case the value of the land should have been placed at the same figure. The amount of damages allowed him was correct. He is entitled to more than Mrs. Guidry because he has more land.

Mr. Guidry claimed compensation for the building of an additional headland, and we think he is entitled to something for that. But we are satisfied that the jury took that into consideration in assessing the damage to his land, and we shall not disturb the verdict in that respect.

█ We have not overlooked the fact that plaintiff's witnesses, or some of them, testified that the building of this highway will enhance the value of the land. They seem to think the country along the road will be built up; that acreage there will. be in demand. This is mere speculation, and remote at that. In estimating the value of land expropriated, the remote possibility that it will at some time be sought after for a particular purpose greatly increasing its value cannot be considered. Louisiana Ry. & Nav. Co. v. Sarpy, supra.

The land is valuable at present only for agricultural purposes, and the building of this road will not enhance its value for that purpose. There is already a highway along the front of the property and a railroad running through it and a dummy line for removing the cane. These furnish all the transportation facilities necessary.

█ It is shown that these lands are assessed at $50 per acre, and counsel for plaintiff contends that this should be accepted as the value for purposes of these suits.

When private property is expropriated for public purposes, adequate compensation must be paid, and the amount of compensation is the market value of the property when taken. The assessed value may be considered as a factor in determining the true value, but it is not controlling. This is true because it is a matter of common knowledge that real property is not assessed in this state at its market value. The real or market value and not the assessed value controls. New Orleans Pac. Ry. Co. v. Murrell, 36 La. Ann. 344; Louisiana Ry. & Nav. Co. v. Morere, 116 La. 997, 41 So. 236; Yazoo & M. V. Ry. Co. v. Teissier, 134 La. 958, 64 So, 866; Shreveport & Red River Valley Ry. Co. v. Hinds, 50 La. Ann. 781, 24 So. 287.

For the reasons assigned, the judgment in the case of Louisiana Highway Commission v. Mrs. E. J. Guidry, No. 31385, is amended so as to award defendant $354 for the value of the land taken and $1,000 for damages to the property; and that the judgment in the case of Louisiana Highway Commission v. Edwin J. Guidry, No. 31426, be amended by reducing the amount of the award for the land taken from $1,000 to $750, and, as amended, the judgments are affirmed, the defendant E. J. Guidry to pay the costs of appeal in his case, all other costs to be paid by plaintiff.