133 So.2d 841 (1961)
TEXAS GAS TRANSMISSION CORPORATION
v.
Lee Roy FONTENOT.
No. 220.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1961.
On Rehearing November 7, 1961.
*842 Shotwell & Brown, by Burt W. Sperry, Monroe, for plaintiff-appellant.
Fusilier, Pucheu & Soileau, by J. William Pucheu and L. O. Fusilier, Ville Platte, for defendant-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
SAVOY, Judge.
This is an expropriation suit by plaintiff against defendant for the purpose of obtaining a right-of-way or servitude over the land of defendant for the construction of a 30-inch pipeline across a portion of defendant's property. The only issue on appeal is the value of the property expropriated.
The district court allowed defendant the sum of $3,295 for the property expropriated by the plaintiff. The award is itemized as follows:

(1) Relevel............................. $ 270.00
(2) Loss of rice........................ 575.00
(3) Loss of pasture..................... 325.00
(4) Loss of shade trees................. 375.00
(5) Loss of value of remaining land..... 1500.00
(6) Value of rights expropriated........ 250.00

*843 The evidence disclosed that the right-of-way taken is 50 feet wide and is approximately two and one-fourth acres. The proposed pipeline will run 1,893.6 feet north and south across and approximately in the middle of defendant's tract of land.
Plaintiff appealed from the ruling of the trial judge. Defendant answered the appeal, asking for an increase in the award.
The law on the subject of compensation and damages is stated in the case of Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914, 916, in the following language, namely:
"The law is well settled, and counsel for the respective litigants agree, that the amount due for private property expropriated for public purposes is its market value when taken. Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1. The market value of property is its fair value between one who wants to purchase and one who wants to sell, under ordinary and usual circumstances. Opelousas, G. & N. E. Railroad Company v. Bradford, 118 La. 506, 43 So. 79; Louisville & N. Railroad Company v. R. E. E. DeMontluzin Company, Inc., 166 La. 211, 116 So. 854; Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354. It does not mean speculative value. Louisiana Highway Commission v. Lasseigne, 177 La. 440, 148 So. 672. Furthermore, compensation is due to the owner not only for the value of the property actually taken but also for damage caused to his remaining portion after the taking. Louisiana Highway Commission v. Guidry, supra."
In deciding whether the award made to defendant was excessive, we will determine, first, the value of the right-of-way taken by plaintiff.
Plaintiff called as witnesses in its behalf Mr. Joseph W. Fontenot, Mr. Henry P. Gossen, Mr. E. J. Jandacek, Mr. Marvin Lyons and Mr. Gilbert H. Vidrine.
Mr. Fontenot, a registered real estate dealer, was qualified by the court as an expert. He appraised the property expropriated at between $200 and $250 an acre. He arrived at the estimate by comparing subject property with four other sales in the vicinity.
The next witness for plaintiff was Mr. Gilbert H. Vidrine. Mr. Vidrine was in the real estate business and was an abstractor. He arrived at the same conclusion that Mr. Fontenot did as to the value of the property involved in the right-of-way. He stated that the highest and best use of the property was for rice and cattle.
Mr. E. J. Jandacek was chief engineer for plaintiff corporation. His testimony dealt with the laying of the pipe and cost of the pipeline and other related matters.
Mr. Henry P. Gossen and Mr. Marvin Lyons, witnesses for plaintiff, were both farmers and testified generally as to the percentage loss of the crop on the expropriated right-of-way.
Defendant used in his behalf the following witnesses: Mr. Wallace J. Reed, Mr. Elwood Tate, Mr. J. D. Vidrine and himself.
Mr. Tate is an agriculture teacher and testified generally as to the yield per acre on the property in question, price per barrel, and the value of the property for pasturage possibilities. He testified that since the pasture consisted of rice stubbles after each harvest that said pasture would not have a great value for that purpose.
Mr. J. D. Vidrine testified that he was experienced in building crayfish lakes, and gave the approximate yield of 1,000 pounds of crayfish per acre and the price per pound.
*844 Mr. Wallace J. Reed stated that he was a general farmer and cattle raiser. He said he had pipelines crossing his property and gave the estimate of releveling cost after the pipeline crossed the property in the instant case. He also stated that after a pipeline is laid, the property embracing the pipeline will not give the maximum yield of the specified crop thereon.
Defendant testified on his behalf and his testimony did not add anything to the record.
The defendant introduced in evidence a deed whereby Transcontinental Pipe Line Corporation purchased a tract of land in the vicinity for the sum of $2,500, said property contained 5.31 acres of land. The jurisprudence of this state has been established to the effect that a sale made to the condemning authority under the threat of expropriation is not a willing seller transaction and is therefore not controlling as a comparable sale, although it may be considered in determining value. State v. Dowling, 205 La. 1061, 18 So.2d 616; Orleans Parish School Board v. Paternostro, 236 La. 223, 107 So.2d 451; Parish of East Baton Rouge v. Edwards, La.App. 1 Cir., 119 So.2d 175.
Considering all of the evidence in the case, we believe that an award of $200 per acre for the two and one-fourth acres, or a total of $450, is adequate for the property taken herein.
The trial judge granted judgment in favor of plaintiff for $1,500 for loss of value of remaining land. We have examined the record and find there is insufficient evidence to make a determination of this item and in the interest of justice we will remand the case to the lower court for the restricted purpose of receiving additional evidence on this item.
We are of the opinion that the award of the trial judge to relevel the property, for loss of rice and loss of pasture should not be allowed separately from the value of the property taken by plaintiff. The item of shade trees is speculative, as the trees were wild growth, and this item is rejected.
For the reasons assigned, the judgment of the trial court is amended so as to increase the amount of the award for the servitude taken from $250 to $450, and by disallowing the award for loss of rice, loss of pasture, and loss of shade trees, and for releveling the property, and the case is remanded to the district court for the limited purpose of showing the loss of value to the remaining land.
Costs of court are to await final determination of the case.
Amended and affirmed in part, remanded in part.

On Rehearing.
Before TATE, FRUGÉ, SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
In our decision rendered this date on rehearing in the companion case entitled Texas Gas Transmission Corporation v. Fuselier, 133 So.2d 828, our discussion and conclusions as to the factual and legal issues involved is applicable in the instant case. These two cases were consolidated because the issues and the evidence in each are almost identical.
The only differences in the facts of the two cases, which we deem it necessary to mention here, are as follows: Mr. Fontenot's rice field, which has to be releveled, contains 27 acres, rather than 29 acres, and at a cost of $10 per acre the award for this item of damages is therefore $270. There is no relief pump on Mr. Fontenot's property which will have to be relocated, and therefore this issue is not present in the instant case. On Mr. Fontenot's property, *845 the evidence shows there are 15 shade trees, approximately 3 inches in diameter, which will have to be cut from the right of way, but in all other respects the evidence is the same and therefore our finding is the same as to this item. As to loss of crayfish sales, we note that in the instant case the trial judge also denied recovery for this item as being too speculative. As to loss of value of remaining land, we note that in the instant case the defendant, Mr. Fontenot, admitted he could give no estimate of loss in market value to his farm caused by the expropriation and therefore the only evidence in the record in this regard is the testimony of plaintiff's witness, Mr. Vidrine, that there was no diminution in market value. Furthermore, in this case there are already two, instead of one, existing pipelines. Our reasons for deciding not to remand the instant case are the same as set forth in our decision in the Fuselier case.
For the reasons assigned, our original opinion rendered herein is amended so as to allow the defendant damages in the sum of $270 for the cost of releveling his 27 acre rice field, in addition to the sum of $450 which was awarded to the defendant as compensation for the value of the rights expropriated, making a total of $720. The remainder of defendant's demands for compensation and damages are denied. Our order remanding this case to the lower court is recalled and cancelled. All costs in the lower court, as well as the costs of this appeal, are assessed against the plaintiff.
Amended and affirmed.
HOOD, J., concurs in the decree.
TATE, Judge (concurring in part, dissenting in part).
The writer concurs insofar as the majority allowed the defendant land owner some of the damages caused him by the taking. But he must vigorously dissent insofar as the majority disallowed any compensation at all (a) for the decreased productivity of the field as a whole caused by the taking, (b) for other severance damages in the nature of the depreciated value of the remainder of the property because an additional pipe line was laid across it, and (c) for the 16-foot temporary right of way used by the plaintiff corporation, about one-half acre of land. (The majority has allowed some compensation only for the permanent right of way taken for one pipe line.)
The trial court awarded the plaintiff $3,295 for the taking. The majority has cut this award to $720, by disallowing various properly recoverable (in my opinion) damages caused by the taking. The uncontradicted evidence shows that for a similar taking for a second pipeline on neighboring land the pipeline company had voluntarily paid $26 per rod, see Tr. 132. Compensation at this rate for the present taking of 114.8 rods would amount to $2,984.80, or roughly in the area of the trial court's award. (In fact, as the brief of counsel shows, the plaintiff voluntarily offered $12.50 per rod, which would total $1,435, prior to suit; almost double what the majority has awarded.)
From these computations I think it is obvious that the award of the majority is far too low, and that the majority thus disregards almost all of the testimony in the record that each pipeline, because of its disturbance of the top soil and injection of foreign substance into it, decreases the productivity of the field as a whole, and that each pipe line, by multiplying as to prospective purchasers the danger of an explosion, thus also reduces the market value of the land as a whole.
For the reasons more fully stated in my dissent in the companion suit, Texas Gas *846 Transmission Corporation v. Fuselier, 133 So.2d 828, rendered this date, I must respectfully dissent from the majority opinion.