HAMLIN, Justice
(dissenting in part and concurring in part).
I respectfully dissent from that part of the majority opinion which reversed the judgment of the Court of Appeal insofar as it allowed Mrs. Mabel M. Reymond $6,250.00 as consequential damages for diminution in value to her property and awarded Verdi'e Reese Perkins expert witness fees for his testimony with respect to such diminution.
The majority opinion recites the facts of this matter; repetition is not necessary. The Court of Appeal quoted in great part the reasons for judgment of the trial court. I am in complete accord with the trial court’s findings^ with respect to the consequential damages suffered by plaintiff; they recite in part:
“It appears that Mrs. Reymond purchased her residence at 3464 South Eugene Street in October of 1956 for $9,-925.00. Her dwelling was described as being a ‘modest five-room residence of frame construction,’ approximately 15 to 18 years old and situated on a residential lot of approximately 60 feet frontage. Originally, before the construction of the Interstate, the house was located in a *456 well established subdivision of comparable or better class residences.
“Sometime in 1962, development of the Interstate commenced. Construction followed the expropriation and removal of the residences in the area. The Interstate did n'ot' take any of Mrs. Reymond’s property; however, it did take all 'of the residential property across the .'street from her house. In addition, the Interstate was constructed at such an angle that Eugene[1] Street had to be rerouted, and while Mrs. Reymond’s property still faces Eugene Street, it has obviously been separated and isolated from the remaining portion of the subdivision and neighborhood. There are three other residences on the same side of the street as Mrs. Reymond’s that share a similar fate.
“Turning to the situation at hand, it is obvious that the property of Mrs. Reymond has not only been isolated by the construction of the raised portion of the Interstate, but a peculiar problem has been presented relative to the property’s accessibility. It is apparent from a physical inspection of the location, as well as from the exhibits in the record, that four residences (including that of Mrs. Reymond) have been completely severed from the balance of the subdivision. Further, it is evident from the testimony of the witnesses that confusion exists in locating this portion of Eugene Street southeast of the pillars of the Interstate. A good indication of this situation is shown in Exhibit P-4 where the street sign itself leads an inquirer to believe that the portion of the street leading under the pillars of the Interstate is actually Honeysuckle Avenue instead of Eugene Street. Mrs. Reymond strengthens this observation when she related that delivery and service people had difficulty in finding her residence due to the situation. Inasmuch as only three other residences share these problems created by the construction of the Interstate, the Court finds that Mrs. Reymond’s property indeed suffered such special damages which were not related or common to those shared by other property in the neighborhood and for which compensation in the form of consequential damages should be allowed.
“Mr. Verdie Reese Perkins, a real estate appraiser with a wealth of experience in the field, testified that he was personally acquainted with Mrs. Reymond’s property before and after the Interstate was constructed. He estimated the value of Mrs. Reymond’s property immediately before construction in 1962 at $12,250.00. His estimate of its value after construction was $6,000.00, therefore, a diminution or loss in value of $6,250.00. He described as being impor *458 tant factors influencing the value downward as: 1) Accessibility, 2) noise of Interstate, 3) view, 4) desirability, and 5) separation from the remainder of the neighborhood. To sum it up, he said ‘It is just not a desirable piece of property now.’ Mr. Perkins used the market data approach in placing a value on the property and specifically offered as a comparable the sale of an ‘identical home’ next door in 1966 for the price of $5,900.00.
“Mr. ICarl Snyder, also an experienced real estate appraiser testified concerning a report he had made in connection with an appraisal of the plaintiff’s house and lot. He acknowledged also that certain factors presented by the property’s ‘proximity’ to the Interstate caused some depreciation. However, he was of the opinion that the improvement of the street with curb and gutter was a balancing factor against this lessening of value. He followed both the ‘cost’ and ‘market’ approach in seeking a value for the property when he made his report in 1967. He said the market approach utilizing comparables was the most reliable and on that basis he arrived at a value of $7,-500.00. However, Mr. Snyder used the figure of $7,600.00 derived from his ‘cost’ approach evaluation to show a loss in value of $2,400.00, being the difference between what the property was worth without the factor of the Interstate and what it is worth as is.
“While the Court recognizes Mr. Snyder’s ability and the features of his appraisal upon which he based his opinion, it must be noted that Mr. Snyder admitted that he made no estimate of the value of the property before construction as did Mr. Perkins. In order to apply the recognized rule for severance and consequential damages, it is necessary that the appraisers determine the value of the property before the taking, and in this case Mr. Snyder did not do so. Accordingly, the Court must give controlling weight to the opinion and findings of Mr. Verdie Reese Perkins, whose estimate as to the severance or consequential damages was in the amount of $6,250.00.”
In the case of Jarnagin v. Louisiana Highway Commission, 5 So.2d 660, the Court of Appeal stated:
“We are of the opinion that a physical invasion of real property or of a real right is not indispensable to the infliction of damages within the meaning of the constitutional guaranty under discussion. If the public improvement, as a consequential effect, has caused special damage to property, such as is not sustained by the public or the neighborhood generally, whether it abuts the improvement or not, an action lies to recover. This is true although the improvement be made by an agency having lawful authority so to do. * * * ”
*460 In a later case, Central Louisiana Electric Co. v. Harang, 131 So.2d 398, the Court of Appeal stated:
“It has been held that consequential injuries to the owner resulting from discomfort, inconvenience or loss of business are damnum absque injuria' and not compensable, American Tel. & Tel. Co. of Louisiana v. Maguire, 219 La. 740, 54 So.2d 4; Louisiana Highway Commission v. Boudreaux, 19 La.App. 98, 139 So. 521, supra; State v. Sauls, 234 La. 241, 99 So.2d 97, unless such inconvenience caused the landowner diminishes the market value of the land not taken. Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1; Opelousas, Gulf & N. E. Ry. Co. v. St. Landry Cotton Oil Co., 121 La. 796, 46 So. 810.”
The majority opinion has.correctly stated the law to be as follows :
“The criterion for assessing the special damage suffered by a property owner because of the construction of a public project under eminent domain is whether that damage is not suffered by those in the general neighborhood — that is, whether the damage is peculiar to the individual who complains. * * *
“The damage which a property owner may claim against one exercising the power of eminent domain would exclude non-physical damage, and the physical damage which is recoverable must be proximately caused by the improvement as designed and constructed or must be the probable, the immediate, the direct, and the necessary result and effect of the activities engaged in during construction. In short, compensable physical damage to adjacent property is restricted to that which is actually a consequence of the activity complained of.”
The majority opinion has found that plaintiff’s damages are damnum absque injuria. The writer believes that this conclusion is erroneous, and that the following findings of fact by the majority opinion are also incorrect:
‘■‘In this case the effect of the construction is not limited to the neighborhood, or eveñ to plaintiff and her three neighbors, and certainly not to the plaintiff alone. -All the owners of such property, like the plaintiff here, must suffer the noise of traffic and must view less pleasant surroundings.”
’ These findings are contrary to - those found by the trial judge who saw and heard the witnesses and who was familiar with the locale of the plaintiff’s property and its proximity to Interstate 10. The findings are also contrary to those of the Court of Appeal. That Court stated:
“Considering the evidence produced as to the accessibility of the Reymond home prior to and subsequent to the construction of Interstate 10, we certainly feel that special damages were caused petitioner which damages are recoverable *462 under the provisions of Article 1, Section 2 of the Constitution. Certainly the damages to her property due to the location of the Interstate Highway cannot be considered general damages as were suffered by other residents of the whole subdivision or neighborhood.”
Article I, Section 2, of the Louisiana Constitution of 1921, provides:
“No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.”
If public improvements, as consequential effects, have caused special damage to property such as is not sustained by the public or neighborhood generally, compensation is recoverable. State, Through Department of Highways v. Terry, La.App., 194 So.2d 144. The only damage that is compensable is a special damage to the owner with respect to his property, resulting in its depreciation in value, in excess of that sustained by the public generally. It must be different in kind from that suffered by all other property in the locality or neighborhood. The measure of the compensation payable is the diminution in the property’s value for sale and rental. Carter v. Louisiana Highway Commission, La. App., 6 So.2d 159, See, Cucurullo v. City of New Orleans, 229 La. 463, 86 So.2d 103.
From the above quoted facts, I find that the plaintiff suffered physical and consequential damages, and that such damages were proximately caused by the construction of Interstate 10. I also find that she has suffered a substantial diminution in the value of her property. This fact was affirmed by Verdie Reese Perkins whose testimony was knowledgeable, expert, and clear. Mr. Perkins’ testimony was more detailed than that of the expert witness of the defendant State of Louisiana, Through the Department of Highways, and was based on a greater number of estimates. Plaintiff’s damage was consequential, physical, and peculiar as to her; it was not the type sustained by the public or the neighborhood in general.
Under Article I, Section 2, Louisiana Constitution of 1921, the authorities above cited and quoted, and the facts and circumstances of this case, plaintiff is entitled to compensation for the damages she has suffered. The amount of $6,250.00 found to be just compensation by the trial court and by the Court of Appeal is, in the writer’s opinion, adequate. It follows that plaintiff’s expert witness is entitled to fees for the testimony he gave during trial.
While I appreciate the time and effort expended in connection with the affirmance in part of the judgment of the Court of Appeal by the majority opinion, I can only concur in this Court’s decree which affirmed in part the Court of Appeal’s iadg *464 ment. I do not believe that the discussion of Article 667 of the Revised Civil Code in the majority opinion was necessary to a decision in the instant matter.
For the above reasons, I respectfully dissent in part and concur in part with the majority decree of this Court.

. So use your own as not to injure another’s property.