## LOUISIANA HIGHWAY COMMISSION v. JOHNSON et al.

### No. 5953.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1939.

N. S. Hoffpauir, of Crowley, and E. R. Stoker, of Baton Rouge, for appellant.

Ragan D. Madden, of Ruston, for appellees.

TALIAFERRO, Judge.

Plaintiff seeks to have adjudicated to it by expropriation two small parcels of land in Section 12, Township 21 North, Range 3 West, Union Parish, owned by defendants, Dr. John M. Johnson and Mrs. Martha Ola Caldwell. The parcels are included in and form a part of the laid out and established route of the Bernice-Camp Creek School State Highway, State Route No. 425, which, when this suit was filed, plaintiff was constructing. The smaller of the parcels contains .47 of an acre. It is on the south side of the SE¼ of NW¼ and is 30 feet wide and 682.44 feet long. The larger parcel contains 2.27 acres. It is entirely within the limits of the NW¼ of the SW¼. That part of the route embraced in this acreage begins on the south boundary line of this forty, approximately 600 feet from its southeast corner, and runs North 18 degrees 10' East for a distance of 750 feet and from this point makes a gradual curve easterly, approximately 600 feet, crossing the east line of the forty at a point about 1200 feet above its southeast corner. To construct the road over this projected location will divide said forty into two parts. There will be approximately eight acres on the east side of the line. But for the curvature of the 600 feet line this separated tract would be a right angle triangle with base of 600 feet, altitude of 1200 feet and hypothenuse of approximately 1350 feet. It is entirely disconnected from the .47-acre tract.

In so far as the .47-acre tract is concerned, no question is tendered by the pleadings save that of its value. But as regards the other tract, the contest is quite heated.

Defendants aver that the proposed right-of-way across the NW¼ of SW¼ will destroy the value of the houses, barns, water well and fences thereon and will damage the land on both sides thereof to the amount of $2400. In the event plaintiff should

succeed herein, in the alternative, defendants aver that it will be necessary for the convenience and safety of the cattle using the pasture lands through which the road will be constructed to have a cattle gap at point of entrance which should be provided at plaintiff's expense. They pray that the demands of plaintiff be rejected and in the alternative that they have judgment for $2400, the value of the lands sought to be condemned and resultant damages and that plaintiff be ordered to construct the cattle gap aforesaid.

A jury of free holders returned the following verdict for defendants:

Value of land ....................$110.00
Damages ........................ 800.00
                                 ─────────
                                 $910.00,

And pursuant thereto judgment was rendered and signed. The plaintiff appealed.

Defendants are satisfied with the award. No increase is prayed for. In brief, their counsel asks that the judgment be affirmed.

Plaintiff seriously contends that in no event should the award to defendants be greater than $300.

The jury fixed a value of practically $40 per acre for the land. This valuation is not attacked by either side. We think the testimony clearly supports the jury's finding thereon. There remains but one question for determination and that is the resultant damages defendants will sustain directly and indirectly because of the cantling of the NW¼ of SW¼.

This controversy is a sequence of the refusal by Dr. Johnson, for himself and sister, Mrs. Caldwell, to grant the right-of-way involved herein. He seriously and we believe, conscientiously, objected to the road being so routed as to divide said tract. He was willing to donate a right-of-way along either the east or west side of it. However, the necessity or lack of necessity for routing the road through defendants' property, as has been done, is not here nor was it in the lower court made an issue.

Plaintiff has assumed the obligation of erecting at its expense all fences and gates made necessary by the construction of the highway over the route laid out by it.

In addition to the NW¼ of SW¼, defendants also own the NW¼ of Section 12, adjacent, excepting possibly a few acres, constituting a tract of some 200 acres. Therefore, their situation from a stand-point of inconvenience and resultant damages from having the forty divided will not be near so great as would be had they only owned the forty, lived on and operated it as a farm. Neither live on the 200-acre tract. Dr. Johnson lives in Ruston and Mrs. Caldwell in Ouachita parish.

It appears that this forty is mostly used for pasturage. A negro tenant occupies the only residence thereon which is west of the proposed highway and approximately 300 yards from the barn which will be east of and about 500 feet from the new road. Dr. Johnson owns two mules and two cows and his tenant owns not over half a dozen cattle which constitute the only stock grazing on the pasture. The eight acres east of the highway appears to be all open. A farm residence stood thereon, near the barn, until February, 1934. It was destroyed by fire. Near by the barn is located a concrete curbed well affording water for the stock.

The fact that the proposed highway divides the forty as above described, disconnects the barn site and well from the larger acreage, necessitating according to some of defendants witnesses, the removal of both to the larger tract, or submission to the inconvenience of transferring stock back and forth, constitute the basis of the alleged claim for damages herein.

The testimony on the question is practically unanimous that defendants' barn may be removed to the west side of the road without serious injury by any person skilled in the removal of buildings. It was moved bodily from a former location to its present situs. A competent workman testified it could be so removed for $125 and that he would gladly undertake doing so for this amount. His evidence on this score is not contradicted; in fact, no other witness attempted to estimate the cost of the removal.

The well near the barn, of course, cannot be removed. No attempt was made by either side to fix the cost of digging and curbing another one. Counsel for plaintiff virtually concedes that to duplicate this well on the opposite side of the highway will cost $65. We shall accept this figure as determinative of the question. There is another well on the 8-acre tract, adequate to provide water for stock worked or pastured thereon.

Several substantial farmers owning land not far from that of defendants testified in the case. All of them concede that the 8-acre tract is large enough to conduct farm-

ing operations on or to use for grazing a small number of stock. Nearly all of the witnesses admit that the presence of the road across the tract will be a constant source of inconvenience on account of opening and closing gates on either side of the road and transferring stock. But their estimate of the extent of such inconvenience is largely based upon the assumption that the barn will remain on the smaller tract. If removed, of course, the inconvenience arising from transferring stock across the road, will be to a large extent eliminated. Of course, we know, that as long as there is single ownership of this forty, as divided, the inconvenience from handling it will, from the very nature of things, be greater than if not divided. However, to estimate such inconvenience in dollars and cents presents a question over which the most practical, experienced and learned of men will disagree.

We are rather firmly impressed with the belief that should defendants offer the entire 200 acres for sale that the presence of the gravel road on the forty would not to any extent militate against obtention of a satisfactory price; but, on the contrary, likely would have a favorable influence upon the changes for securing such a price. Several farmers testified that they would prefer owning the forty with the road as is than without it; others held the opposite view.

■ We are reluctant to modify a jury's award of damages in a case of this character. We know, however, that the almost invariable rule is that juries, out of an abundance of caution, in arriving at the value of private property taken for public purposes and resultant damages, act too generously towards the land owner. If error is committed, of course, it should be on that side of the case.

■ In this state, appellate courts are vested with jurisdiction to revise judgments rendered in condemnation proceedings, and often exercise that power in order to prevent injustice being unintentionally done. This court, within recent years, has been called upon to pass on three cases of this character. In two of them the jury's award was substantially reduced, while in the other, the award was nearly doubled. See Louisiana Highway Commission v. Merchant, La.App., 174 So. 696.

■ In the present case, all things well considered, we are of the opinion that the award of damages is excessive by three hundred dollars.

If defendants choose to remove the barn and dig a new well, there will remain in their hands over three hundred dollars as compensatory damages. The value of the 8-acre tract, under the testimony, is very little, if any, in excess of this amount. If this tract should be entirely abandoned because of inconvenience, etc., defendants will have received in money practically all it is worth. This being true, they have meagre grounds of complaint.

Therefore, for the reasons herein assigned, the judgment appealed from is amended by reducing the amount thereof to Six Hundred Ten and No/100 ($610) Dollars, and as amended, it is affirmed with costs.