In 1929 the City of New Orleans acquired by donation a certain area of land in the Parish of Plaquemines, from which *Page 83 
was established the Alvin Callender Air Field. Acting pursuant to the terms of the Department of Commerce Appropriation Act of 1942, Public Law 135, Seventy-Seventh Congress, Title II, c. 258, 55 Stat. 277, the Administrator of Civil Aeronautics of the United States Department of Commerce designated the development and enlargement of this air field as necessary for national defense, and, accordingly, funds have been allocated by the federal government for clearing and leveling additional land for that purpose, the cost of acquiring the additional property to be paid by the City of New Orleans. To carry out the purposes heretofore designated, the City of New Orleans, being unable to agree on the purchase price with the various owners, pursuant to the authority of Ordinance No. 15,339 C.C.S., approved July 1, 1941, as amended by Ordinance No. 15,419 C.C.S., approved October 7, 1941, filed these consolidated suits seeking to expropriate certain parcels of land owned by defendants herein within the proposed development.
The defendants contended that there existed no necessity for the expropriation of their respective properties. They also claimed, in the alternative and in the event that the necessity was shown to exist, the value of the parcels to be taken.
In the district court the cases were consolidated and tried before a jury convened under the provisions of article 2626 et seq. of the Revised Civil Code. A jury of freeholders adjudicated the land to the city conditioned upon a deposit by it with the sheriff of Plaquemines Parish of the sum of $4,660, the aggregate of the individual awards o the various defendant-owners, and reserved to said defendants having fee simple titles to said parcels, and those holding under or through them, all mineral rights to be thereafter exercised by "directional drilling" only as long as the land expropriated is continued to be used as an air field and in a manner as not to interfere with its purposes.
From these judgments plaintiff has appealed and has asked that the amounts awarded be reduced. The defendant landowners resist the reduction sought and, in answer to the appeals, have prayed that the judgments be amended so as to increase the amounts awarded, consistent with the values involved, respectively.
The sole issue before us is the reasonableness of the quantum of the respective awards. In our opinion the verdicts are erroneous as to the values fixed and it is readily obvious that the reductions contended for by the plaintiff are much too low, and the increases demanded by the defendants, respectively, being much too high.
The original Alvin Callender Airfield created in 1928-1929 comprised an area of 140 acres donated to the New Orleans Airport Company, a private non-trading corporation composed of one representative each from about twenty different civic organizations in the City of New Orleans. Fifty additional acres were subsequently acquired by purchase from George S. Hero, Sr., the donor of the original tract. Upon the establishment of this airport, the said Hero conceived a plan for the development of the lands owned by him adjacent to said airfield. Accordingly, he subdivided the area into nine hundred and eleven lots, the greater number of which measured forty-five feet in width by a depth of one hundred forty-five feet. Together with the formation of the lots, streets were laid out and graded. In 1929 the various defendants purchased two or more lots within this subdivision, which purchases were effected by agreements of sale and bonds for deed. Under these bonds for deed Hero did not divest himself of title, the perfection of which depended upon full payment of the amounts called for in the respective bonds. It is shown that each lot was sold for $100, or slightly more, depending upon its location, and in the instant case it is shown that the respective defendants purchased not less than two lots, paying a minimum price of $200. The agreements of sale and the bonds for deed called for a small down payment, the balance in each instance being represented by promissory notes of the purchasers, payable in small monthly installments.
Subsequent to the death of George S. Hero, Sr., the remaining unsold lots within the subdivision were acquired by New City, Inc. Hence, said corporation, as the holder of unpaid bonds for deed, is made a co-defendant herein, together with all other parties, such as mineral lessees, having or asserting an interest in the parcels here sought to be expropriated.
It appears to us that defendants have treated lightly the defense of the lack of necessity for these expropriation proceedings. It must be conceded that the City of New Orleans, as a political subdivision *Page 84 
of the State of Louisiana, undoubtedly has the right, acting in pursuance of the ordinances, supra, to expropriate the property in question for the purposes contemplated. It is empowered to exercise the right of eminent domain to provide for the promotion of the public benefit. In order that the natural resources and advantages of the locality may receive its fullest development and to provide for the safety of the people, by virtue of the fundamental purpose of its sovereignty, it can condemn and expropriate property necessary for streets, parks, parkways, playgrounds, airports, et cetera. It is axiomatic that, where a municipality can better, more conveniently and more beneficially give service to and advance the welfare of the community through the taking and owning of property than it could without possession, then the property becomes necessary for public use. If the purpose to be accomplished is true, then the question of the necessity is solved in favor of the right to expropriate.
In the consolidated cases under consideration, it is shown that the taking of the land is for the enlargement of an existing air field. The proposed development springs in part from the federal government, which presently is vigorously prosecuting a program of national defense, particularly in areas considered strategic by reason of location and importance. It is shown that the City of New Orleans occupies such a strategic position, located, as it is, at the mouth of the Mississippi River, the gateway to the broad expanses of the Mississippi Valley. Because of this location, the City of New Orleans and its vicinity, for aeronautic purposes, are considered vitally important both from the standpoint of commercial development and of national defense, and for this reason has been singled out by the federal government as the only area to receive major allocations for two additional air fields, the Alvin Callender Airfield and the field adjoining the port of embarkation, and which can, when necessary, be converted into air fields of military value.
As a consequence of this program, the federal government has established the policy, with reference to this particular series of operations, that the political subdivisions wherein the airfields are to be located, whether state, parish, city or other subdivision, are required to purchase or acquire title to the needed land, the theory thereof being to tie in the interest of the locality with the airfields, so that it would ultimately become a part of the community. Under this policy, after completion of the airfield, the political subdivision owning the land is obligated to maintain the same unless the government should find it necessary, in the interest of national defense, to make use thereof. However, on the termination of such emergencies, the air field, with its improvements, reverts to the subdivision owning the land, which in this instance would be the City of New Orleans.
It is shown that the federal Civil Aeronautics Authority has declared not only the public benefit which the Alvin Callendar Airfield can serve and the requirements of the additional property to be so dedicated, but also the necessity of its enlargement. The defendants offered no proof in rebuttal of that evidence. The only evidence offered by them was upon the question of the value of the property sought to be taken. It is obvious, therefore, that proof of the necessity for acquiring the land has been more than amply shown.
With respect to the value of the property involved, it is shown that the twenty-two lots owned by defendants, respectively, in addition to the 1.27 acres owned by Mr. and Mrs. David Crawford, are situated in a rural section and in the rear of properties facing a public road running parallel to the Mississippi River. These lots lie about twelve hundred feet from the public road and extend to the boundary of the old Callender Airfield. Undoubtedly, establishment of this airfield induced the creation of the subdivision. It is also shown that all of the streets, with the exception of one, namely Concession Street — and the latter poorly defined — are heavily overgrown with brush, waist-deep weeds and trees of eight to ten years' growth. In fact they are impassable and are not used by vehicular traffic. The drainage facilities have long since become obliterated. None of the lots laid out in the subdivision have been fenced in. There are no buildings or other visible signs of improvement in the subdivision save a small Catholic church and rectory, standing as a silent sentinel in what appears to be a rather desolate wilderness. It is proven that the lots owned by these defendants, respectively, were not purchased for their own residential purposes, but solely with the view of speculation. Undoubtedly this *Page 85 
subdivision "mushroomed", as others of that era. The developer doubtless had visions of an active and bustling airfield, around which a thriving community would soon be a reality. To make the project doubly attractive to persons of low incomes, the lots were offered for sale at a small down payment and the balance of the purchase price made payable in small monthly installments.
The defendants here doubtless purchased their parcels with a similar vision in mind and in anticipation of a quick turnover at Midas-touch profits. Unfortunately for them, their investments proved rather disastrous, for it is shown that the Alvin Callendar Airfield was placed to very little commercial use and was practically abandoned shortly after the establishment of the New Orleans Airport in about the year 1932. As a consequence of this non-usage, it is evident that the defendant-owners of the various lots, together with the New City, Inc., as owner of the large number of remaining unsold lots, permitted the entire area to be overrun with weeds, brush and willow trees, with no effort being made to improve the locality. Of course, these lands are yet available for cultivation, but it can be fairly said that the subdivision is one in name and on paper only. As building lots they have as yet only a speculative value.
It is shown by the testimony of Numa Hero, who is interested in the ownership of the remaining unsold 880 odd lots, that an agreement for their sale has been effected between the New City, Inc., and the City of New Orleans on a basis of $250 an acre. The remaining unsold lots agreed to be sold comprise an area of 40.47 acres, which acreage is contiguous and adjacent to the lots owned by the various defendants. It is also shown that land comprising 11.48 acres, adjoining the subdivision, has been purchased by the City for airfield purposes at $100 per acre and that an adjoining acreage of 7.6 was purchased by the City at the price of $125 an acre. The lots owned by the respective defendants, in each case, comprise a small fraction of an acre, with the exception of the property owned by Mr. and Mrs. Crawford, whose parcel contains 1.27 acres. The aggregate or total area of the lots sought to be expropriated amounts to 3.13 acres. The jury, in awarding the aggregate of $4,660 to all defendants, assessed the valuation at the rate of $1,488.81 per acre. It also appears that though, in a majority of the awards, defendants were awarded twice the amount of the purchase price of their respective parcels, the jury, in making the award in favor of Mr. and Mrs. Crawford, who had not appeared, assessed the 1.27 acres owned by these particular defendants at the rate of $326 per acre.
The value of the parcels to be expropriated should not be computed upon an acreage basis as in the purchase made by plaintiff from the New City, Inc. True, the land in both instances is of a similar character, however, these respective defendants are being divested of all of their holdings, whilst the New City, Inc., is retaining ownership of land adjoining the airfield, which will unquestionably be made more valuable by virtue of the improvements. Again, the area sold by the New City, Inc., constitutes a large undeveloped acreage, whilst that owned by these defendants are small, single plots laid out and purchased for speculative building purposes.
The judgment of the lower court has reserved to each defendant all mineral rights in, to and under the parcels of land expropriated, only to the extent of exploitation or development under "directional drilling". It is well recognized that mineral rights have only a speculative or conjectural value. We find no evidence in the record which could serve as a basis for placing a value on these mineral rights, the exploitation of which has been limited. Though it is shown that there is some successful oil development one or two miles distant from the properties involved, there is no evidence presented that the land here sought to be expropriated is within the area of potential productivity. We are not favored with any testimony in that respect. In view of the limitations placed upon the right of the owners to develop and exploit the minerals so reserved as long as said land is used as an airfield, we feel that an award of $25 to each defendant on this score is commensurate.
We are impressed with the principle that appellate courts, though vested with the power to revise judgments rendered in condemnation proceedings, are reluctant to modify a jury's award, and we are also not unmindful of the rule that such awards should be set aside if they are manifestly erroneous and would result in injustices. A verdict of a jury, like every *Page 86 
other judgment, must eventually be predicated upon the law and the evidence, and, where such verdict is obviously excessive and does not conform to the evidence submitted, it is our duty to correct it. Texas Pacific-Missouri Pacific Terminal R.R. of New Orleans v. Rouprich et al., 8 La.App. 181; Louisiana Highway Commission v. Johnson et al., La.App., 189 So. 314; Housing Authority of New Orleans v. Polmer et al., 195 La. 608,197 So. 247. The records in the instant cases clearly show that there was no evidence adduced to warrant or support the value arrived at by the jury. The verdicts and the judgments are, therefore, clearly erroneous in this respect.
After careful consideration of the facts developed by the evidence and which we have already fully discussed, we are of the opinion that the amounts of the individual awards, save that made in favor of Mr. and Mrs. Crawford, should have been substantially less, and we have concluded to reduce them in accordance with the table hereinafter appearing as a part of the judgment.
We will also allow recovery of $25 to each defendant in connection with the reservation of limited mineral development, already above referred to.
With respects to the defendants, Mr. and Mrs. David Crawford, it is shown that the parcel of land owned by them was never included within the "airport subdivision", nor was it divided into lots, as were the parcels acquired by their co-defendants. The Crawfords' land consists of a long narrow strip, 53 feet wide and 998.10 feet in depth, comprising a total of 1.27 acres. Because of its location and the impracticability of its being divided into lots of any value or service, we would not be warranted in using the lot-value basis in arriving at the amount to be awarded in their particular case. Considering these circumstances, we believe that the sum of $600 would fairly and equitably compensate them.
We shall also allow them — as we have allowed their co-defendants — an additional $25 on account of limitation of development of mineral rights during the time the airfield is in use as such.
The awards of fees to the curators who represented various of these defendants seems proper, and need not be disturbed.
For the reasons assigned, it is ordered, adjudged and decreed that the judgments appealed from, insofar as the allowances for the lands taken are concerned, be and they are amended, in the case of each defendant, in accordance with the following table:
 Trial Judgment
 Court of This
Defendant-Owner: Acre-age: Award: Court:
Mrs. Josephine Schurb,
 Widow of Cecil O. Fure, 0.17 $373.00 $250.00
Mrs. Carrie Christy, Widow
 of Henry F. Seeger, 0.17 $398.00 $250.00
Thomas J. Flanagan 0.33 $742.00 $500.00
Wendle Haas, et als. 0.34 $742.00 $500.00
Mrs. Laura Linden, Widow
 of John L. Trauth, 0.17 $398.00 $250.00
Alvin Dugas 0.17 $398.00 $250.00
Laurence Tullier 0.17 $398.00 $250.00
Mrs. Loretta Burgau,
 Widow of James W.
 Stockton 0.17 $398.00 $250.00
Mr. and Mrs. Charles H.
 Smith 0.17 $398.00 $250.00
Mr. and Mrs. David Crawford 1.27 $415.00 $600.00

It is further ordered, adjudged and decreed that, in addition to the above awards, there be an additional recovery in each case from the City of New Orleans, plaintiff, in the sum of $25.
In all other respects the judgments appealed from are affirmed, at the cost of plaintiff.
Judgments amended and affirmed. *Page 87