**17 So.2d 914**

**LOUISIANA HIGHWAY COMMISSION v.
ISRAEL.**

**No. 35386.**

April 17, 1944.

Arthur B. Hammond, Knowles M. Tucker, and Joseph A. Loret, all of Baton Rouge, for appellant.

Legier, McEnerny & Waguespack, of New Orleans, for appellee.

HAMITER, Justice.

For the purpose of extending the Air Line Highway, by means of an overpass and bridge spanning Ponchartrain Boulevard and the New Basin Canal in the City of New Orleans, there is being expropriated through this proceeding a triangular parcel of ground, a portion of a larger plot of which defendant, Miss Ida Israel, is the record owner.

In her answer to the Louisiana Highway Commission's petition, after admitting that she was the owner of record of the property and averring that the real owners were Bernard Kansas and F. Poche Waguespack, defendant claimed compensation and payment of $15,000, this amount covering not only the value of the parcel sought to be expropriated but also severance and consequential damages resulting to the remainder of the plot.

Following a stipulation of counsel that the suit should proceed as if Miss Israel were the real owner, a trial was had before an expropriation jury. The jury returned a verdict recommending the adjudication of the property to plaintiff upon its payment of $4,500. A judgment, in keeping with the verdict, was thereafter rendered and signed by the district court.

In prosecuting this appeal, plaintiff urges that the award should have been no more than $1,159. Appellee through an answer filed, prays that the amount of the judgment be increased to $8,500.

The Israel property consists of lots 4, 5, 6 and 7 of square 646, Seventh District in the City of New Orleans. This plot, quadangular in shape and containing 5,788 square feet, has a frontage of 138' on Ponchartrain Boulevard, of 46.09' on Cambronne Street, and of 120' on Marks Street. The other boundary, 111' 2" in length and running parallel with Cambronne Street, is the dividing line between the plot and adjoining property on its northwest side.

At the time of the commencement of this proceeding, Ponchartrain Boulevard was a main artery of traffic, contained two wide paved lanes separated by a neutral ground, and adjoined and paralleled the New Basin Canal. Also paved and leading into Ponchartrain Boulevard was Cambronne Street. Marks Street was unpaved.

Except for some sign boards located thereon, the Israel property was without improvements. It was classified as "E" commercial under the zoning ordinances of New Orleans, this meaning that it could be used for commercial undertakings, such as stores, restaurants, hotels, cleaning and pressing establishments, garages and filling stations. In the vicinity, however, were located many residences.

The expropriated portion of the plot is triangular in shape and has an area of 2,318.01 square feet. It may be described as beginning at the intersection of Ponchartrain Boulevard and Cambronne Street and following along the entire Cambronne Street frontage (46.09'), thence running a distance 100.59' along Marks Street (being approximately 84% of the plot's Marks Street frontage), and returning to the point of beginning, 110.65'.

Remaining to defendant is an irregular shaped parcel containing 3,469.99 square feet. No part of it fronts on Cambronne Street, and only 19.14' touches Marks Street. Although the Ponchartrain Boulevard frontage (138') has not been reduced by the expropriation a decrease in its value has resulted; this is because the remaining portion begins at the intersection of Cambronne Street with no depth at all and then widens at an angle of 45 degrees, as a consequence of which more than 50% of that frontage has no usable depth and none has a regular depth.

The law is well settled, and counsel for the respective litigants agree, that the amount due for private property ex-

propriated for public purposes is its market value when taken. Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1. The market value of property is its fair value between one who wants to purchase and one who wants to sell, under ordinary and usual circumstances. Opelousas, G. & N. E. Railroad Company v. Bradford, 118 La. 506, 43 So. 79; Louisville & N. Railroad Company v. R. E. De Montluzin Company, Inc., 166 La. 211, 116 So. 854; Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354. It does not mean speculative value. Louisiana Highway Commission v. Lasseigne, 177 La. 440, 148 So. 672. Furthermore, compensation is due to the owner not only for the value of the property actually taken but also for damage caused to his remaining portion after the taking. Louisiana Highway Commission v. Guidry, supra.

In contending for the excessiveness of the jury's award ($4,500, this being for both the value of the parcel expropriated and damages to the remainder of the plot), counsel for plaintiff direct our attention to the deed by which defendant acquired all of the lots, it bearing the date of February 16, 1938, which was subsequent to the construction of Ponchartrain Boulevard, and it reciting a total consideration of $2,-413.35; and they argue that the value of the small triangular part expropriated one year later (the suit was filed February 23, 1939) should and must be much less than the amount paid by defendant for the whole plot. This argument, in view of the circumstances shown by the record and not

taken into consideration by counsel, cannot prevail.

It was on August 20, 1937, when defendant obligated herself, under a written contract of sale, to purchase all of the lots for the above mentioned consideration. At that time the property was rather inaccessible and not particularly desirable; it lay 75' from the paved roadway, and on the intervening ground were street car tracks, high weeds and numerous trees. No announcement had then been made as to the widening and improving of Ponchartrain Boulevard. Because of defects in the title defendant was unable to obtain the necessary notarial act of sale until. February 16, 1938. Meanwhile, the street car tracks, the weeds and the trees were removed, a paved double boulevard was constructed, the neutral ground was beautified, and the property found itself longside the pavement. By these improvements undoubtedly the value of the property was increased several-fold; and this increase, to the benefit of which defendant is entitled, should be considered in determining the property's worth when expropriated.

The values placed by plaintiff's experts on the expropriated property, including the resulting damage, ranged from $1,391 to $1,901. Obviously, the jury was not impressed with these estimates; neither are we. To our minds they are clearly inadequate. Those experts, we feel certain after studying their testimony, failed to give due and proper consideration to the character of the property expropriated and also did not correctly evaluate the damage resulting to the portion not actually taken. Instead, it appears, they predicated their recommendations on certain sales of inferior and less desirable property located in the vicinity.

As before stated, the entire plot was adaptable for commercial use, not merely for residential purposes as one of the experts thought, it being classified under the zoning ordinances as commercial "E"; and it was bounded by three streets, two of which connected and were paved. One of these (Ponchartrain Boulevard) was a two-lane main traffic artery, along which the property ran a distance of 137'. Moreover, the most valuable portion—that cornering on the two paved streets—is completely destroyed by the expropriation; that remaining, considering its resulting shallow and irregular depth, is of little commercial value.

Defendant's experts, on the other hand, gave estimates which appear to us to be excessive. These were for various amounts between $6,600 and $9,500, and all had as their basis the asserted fact that the site expropriated was most desirable for an oil (filling) station. Perhaps it would have been desirable for the stated purpose if the Air Line Highway had been constructed at grade in that immediate vicinity; and we are inclined to the belief that this contingency influenced the assertions made by the witnesses. Of course, it was not so constructed. In this connection, one of those experts, a person in charge of the real estate of a large oil company gave the following testimony,

after stating that he had offered $8,000 for the site, to-wit:

"Q. I ask you if the consideration you offered for the Israel property took into consideration the Airline Highway at grade? A. Yes, sir.

"Q. Do you think your company would be presently interested in this Israel property as a filling station site, if you forget about the Airline Highway? A. I can say frankly, I don't think so. When we were negotiating for the property we had a pretty good idea that the Airline Highway was coming close to it.

"Q. And, if it hadn't been for the prospects of the Airline Highway, you wouldn't have been interested? A. I don't think so.

"Q. And, as it stands today, without taking into consideration the Airline Highway in any particular, your company is not interested in the Israel property as a filling station site? A. No."

After carefully and thoroughly studying all of the evidence adduced in this proceeding, we are satisfied that no manifest error has been committed by the expropriation jury in awarding to defendant the sum of $4,500.

The judgment is affirmed.

O'NIELL, C. J., did not take part.

ODOM, J., absent.