GLADNEY, Judge.
The Louisiana Power and Light Company, an expropriating authority so empowered under LSA-R.S. 12:2 et seq., instituted this proceeding for the purpose of obtaining a right of way or servitude to locate, construct and maintain an extra high voltage electric transmission line across the property of Lucian M. Roy, the defendant herein, who answered, denying first, the necessity therefor, and second, the adequacy of the compensation offered. After disposing of the first- defense, the parties stipulated that the sole issue presented for decision on this appeal relates to damages or compensation due to the defendant landowner for his land falling within the right of way, and severance damages to his property lying beyond the servitude. The case was tried upon this issue and resulted in a judgment condemning the plaintiff to pay the sum of $6,112.50 as compensation for the land embraced in the servitude, and the further sum of $8,-775.00 as damages to the remainder of defendant’s property lying on both sides of the right of way, thus making a total award of $14,887.50, together with legal interest, expert fees and costs. From the decree plaintiff has appealed and appellee has answered the appeal seeking an increase in the award.
With respect to the servitude or use of the right of way through the Roy property, there has been or will be erected two steel towers, 119.6 feet and 124.6 f^et tall, respectively anchored to underground concrete footings, the bases of which comprise areas measuring 37' X 17' for the smaller towers and 4F X IS' for the larger. Each tower bears two cross arms or bars, the lower arm measuring 96 feet in width and the upper arm measuring 89 feet in width. From the upper arm will be suspended three phases of three conductors (cables) each-or a total of nine cables, each measuring one and one-fourth inches in diameter and weighing one and' one-fourth pounds per foot. These conductors transmit 500,-000 volts. From the lower arm will be suspended two 230,000 volt circuits, comprising six conductors, equally as large and as heavy as the 500,000 volt conductors. Above the arms from the top of the towers will hang two shield wires that measure %6ths of an inch in diameter and weigh .5 pound per foot. This maze of cables covers a vertical space of 53 feet with the lowest at the maximum point of sag being 27 feet above ground at 60° Fahrenheit. Twenty or more feet above the lower cables hang the 500,000 volt circuits and thirty-three feet above them are the two insulation wires. The servitude over the property affects a strip 200 feet wide, extending 1775 feet in length and containing 8.15 acres. The center line of the right of way enters defendant’s property on the south line at a point 300 to 400 yards southwesterly from Walnut Bayou, its eastern boundary, and extends diagonally across it to a point 1915 feet from the Bayou.
The property consists of 125 acres situated seven miles east of Tallulah, Madison Parish, Louisiána, on an asphalt surfaced highway. It is rectangular in shape and fronts about one quarter of a mile on the westerly side of Walnut Bayou. Defendant lives on the property in a five room frame house which will be removed when his new dwelling, now under construction, is completed. Admittedly, the highest and best use of defendant’s property is agricultural or farming. Likewise, all witnesses testifying as to the value of the property agreed that the subject tract was made of the best and most fertile soil, is highly productive, and enjoys a history of good and intensive cultivation.
The trial court rendered judgment condemning appellant to pay the sum of $14,-887.50 as compensation for the land embraced in the servitude and damages to the remainder on both sides of the right of way. In arriving at this sum the court fixed a valuation for the land embraced within the servitude of $1,500.00 per acre subject to a credit of $750.00 for the owner’s retention value. Thus, the 8.15 acres in the right of way as valued for compen *486 sation purposes, was fixed at $6,112.50. The court found the remainder of the tract consisting of 117 acres has been damaged to the extent of $75.00 per acre or a total of $8,775.00. After the appeal was lodged in this court the defendant answered the appeal asking that the award of $14,887.50 be increased to the sum of $16,470.50 for the loss' of a pecan tree standing in the right of way and valued at $1,600.00.
Appellant urges that the trial court erroneously placed an inflated value on the area within the right of way, allowed exorbitant severance damages to the remainder of defendant’s property and erred in allowing costs for defendant’s witness, Malcolm C. Sevier, as an expert appraiser.
On the trial of the case in order to establish the fair market value of the servitude required, plaintiff presented as experts Wayne Medley and Dean Carter both of whom used the market data approach. In addition to the testimony of the owner of the property, Lucian M. Roy, the defense relied upon the expert testimony of Kermit Williams and Malcolm C. Sevier.
Through the use of comparables, Medley arrived at a per acre fair market value of $360.00 and Carter fixed such value at $350.00. Medley assigned a retention value of $70.00 per acre to the area within the right of way proper and Carter assigned a retention value of $100.00 per acre. By use of these figures Medley assigned a value of $2,380.00 as damages sustained for the 8.15 acres taken, and Carter the sum of $2,040.00. With respect to severance damages Medley testified he found no evidence that the proposed power line would cause damages to defendant’s property outside of the right of way. As a basis therefor, he testified that in his opinion the high-, est and best use of the property was as a farm and that portion lying outside of the right of way could be farmed as well after the construction of the power line as before. Carter was of the opinion that two small tracts comprising 2.3 acres to the north of the right of way and 5.4 acres to the south of the right of way would be damaged $100.00 per acre, or $770.00.
Roy testified he considered his property worth $600.00 per acre, but he valued the acreage within the right of way at $1,500.00 per acre. In explanation he said he thought he was entitled to ask a premium price for the property so taken. He recognized it would have a twenty per cent retention value. Defendant’s expert, Kermit Williams, gave his opinion fixing the fair market value of the property lying within the right of way at $600.00 per acre with no retention value to the defendant. Williams, in arriving at the per acre value of $600.00, relied upon the income approach and the market data approach as evidenced by certain comparables. This witness referred also to recent payments made for certain right of ways in St. Martin and Pointe Coupee Parishes. He suggested that the 114 acres after excluding that portion of defendant’s property within the right of way, would suffer a diminution in value of $100.00 per acre. He concluded that plaintiff should be entitled to the sum of $17,-900.00 as total compensation for the servitude. The amount of the appraisal included $1,600.00 for the loss of the pecan shade tree. Sevier valued the Roy property at $700.00 per acre, stating that he placed a value on the 8.15 acres within the right of way at $1,400.00 per acre as he was of the opinion that the 200 foot strip as carved out of the entire tract should be doubled in value. In determining the fee value of the entire property at $700.00 per acre he considered certain comparables and the use of irrigation due to the proximity of Walnut Bayou. He allowed the sum of $1,-200.00 for the pecan tree because of its aesthetic value. His total for all damage amounted to $20,115.25.
After examining the comparables used by the various witnesses we have deemed it advisable to exclude from our consideration those which by reason of their proximity to the limits of the City of Tallulah appear to have enhanced value as suburban property.
*487 This court in Louisiana Power and Light Company v. Greenwald, 188 So.2d 618, decided May 30, 1966, enunciated certain legal principles which determine “just and adequate” compensation to an owner for property taken in expropriation proceedings, stating:
“In resolving issues relating to compensation to be paid for property through expropriation for public use there are certain fundamental principles which must be borne in mind. First, there is the general rule that ‘private property shall not be taken or damaged except for public purposes and after just and adequate’ compensation has been paid.’ La.Const. Art. 1, § 2. The ‘just and adequate compensation to which an owner of property taken in expropriation proceedings is entitled is the full and perfect equivalent of the property taken, that is, the loss caused the owner by the taking, so that the owner shall be put in as good position pecuniarily as he would have been if the property had not been taken.’
“Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295 (1942); State Through Department of Highways v. Barrow, 238 La. 887, 116 So.2d 703 (1960).
“The general rule follows that the measure of compensation to be awarded an owner in expropriation proceedings is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy, that is, the ‘market value’ of the property. “Housing Authority of Shreveport v. Green, supra;
Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914 (1944);
Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193 (1944); City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445 (1951);
Louisiana Power & Light Company v. Simmons, 229 La. 165, 85 So.2d 251 (1956).”
Judge Ayres, as the organ of this court made the following pertinent observations with respect to an appraisal of the servitude arrived at by multiplying by three the market value of the “strip” therein affected:
“As to the last of the aforesaid evaluations, we find neither a factual nor legal basis for tripling the market value of property to reach a basis of an award of compensation. Nor do we think that the ‘strip’ expropriated tripled in value in the process of expropriation. We are not, however, unmindful of the fact that by its topography and other characteristics peculiar to itself a ‘strip’ of land expropriated for right-of-way purposes may possess, by virtue of its superior qualities, a value greater than that of the property as a whole — but, in such event, this superior value must be made to appear to a legal certainty by a reasonable preponderance of the evidence. The record in the instant case does not contain such proof.”
4* ‡ H* sH
“ * * * The basic question is the value of the servitude expropriated for right-of-way purposes. Other factors to be considered include the value of the rights retained by the owner in the right-of-way area. In the instant case, the landowner continues to have full use of the property except for the construction of buildings or the exercise of other activities which would interfere with the rights of the owner of the servitude. Thus, he may continue with his farming operations in the same manner and for all practical purposes to the same extent as theretofore. In cases where the landowner will continue to have use of the property, the right of way should be valued at one-half of its fee value.
“Texas Pipe Line Co. v. Johnson, 223 La. 380, 65 So.2d 884, 38 A.L.R.2d 785 (1953);
Louisiana Power & Light Company v. Simmons, supra;
*488 Gulf States Utilities Co. v. Domingue, 72 So.2d 623, La.App., 1st Cir. 1954; Louisiana Power & Light Co. v. De Bouchel, 143 So.2d 270, La.App., 4th Cir. 1962;
Central Louisiana Electric Co. v. Fontenot, 159 So.2d 738, La.App., 3d Cir. 1964.”
In calculating severance damages in the cited case this court concluded that a strip 200 feet wide on each side of the right of way had sustained severance damages by reason of the construction or use of the power line and calculated the area affected as being diminished in value to the extent of twenty-five per cent, the court giving this explanation:
“From our review and appreciation of the record, after giving consideration to the testimony of all the witnesses, we are of the opinion that defendant did sustain severance damages to a portion of the remainder of his property. This damage is predicated largely upon the inconvenience and difficulties that will be experienced in the aerial application of fertilizer and insecticides. We are not, however, impressed that the inconvenience and difficulties would exist over a too considerable portion of the property. According to the testimony of those in the business of supplying these aerial services, such activities may be performed, but the presence of the electrical lines constitutes another problem and adds to the difficulties in their rendition.

“ * * * Obviously, the difficulties and inconvenience that will be experienced over this additional area are not nearly so great as those which will be encountered within the area of the right of way itself where the farming activities must be conducted under the transmission lines and around the bases of the towers, and where the aerial applications must be made by flying either underneath or immediately above the transmission lines.”
 It is our conclusion after reviewing the comparables presented by the several expert witnesses and by giving consideration to the expert testimony as to the quality and location of defendant’s farming property, a valuation of $600.00 per acre fairly represents the market value thereof. We furthermore conclude that the principles followed in Louisiana Power and Light Company v. Greenwald, supra, may be appropriately applied in the instant case to establish the amount of compensation for the market value of defendant’s property taken. Accordingly, $300.00 per acre, or one-half of the fee value, is allowed for the taking of the property within the right of way consisting of 8.15 acres, or the sum of $2,445.00. As severance damage there will be allowed $150.00 per acre for that area of defendant’s property embraced in two strips each 200 feet wide lying on either side of the right of way. This area constitutes approximately 16.30 acres. We find it has sustained damage to the extent of twenty-five per cent of its value, or $150.00 per acre, with total severance damage of $2,-445.00. We find no merit in the contention there should be a separate allowance for the loss of the pecan shade tree as such a loss has been included within the damages allowed.
Appellant has complained of the allowance of expert witness fees for the testimony of Malcolm C. Sevier. This point we find was effectively disposed of in favor of the appellee in Louisiana Power and Light Company v. Greenwald, supra.
For the reasons assigned, the judgment is amended by decreeing the award of compensation to be paid by plaintiff to defendant to be the principal sum of $4,890.00, and, as thus amended, it is affirmed. The defendant is assessed with the cost of this appeal.
Amended and affirmed.