HALL, Judge.
The Orleans Parish School Board filed these proceedings on February 23, 1966 seeking to expropriate, for use in connection with the construction of a public school building, a piece of residential property owned by defendants bearing the municipal no. 2232-34 General Taylor Street in the City of New Orleans.
Defendants filed an answer in which they prayed that in the event their property be taken they be awarded compensation therefor in the sum of $31,000.00 together with 5% interest thereon from September 13, 1965 until paid.
Following trial on the merits the Trial Judge rendered judgment on May 6, 1966 adjudicating the property to the School Board in full ownership upon payment to defendants of the sum of $23,200.00, together with legal interest thereon from February 24, 1966 until paid and all costs including the sum of $1,400.00 for expert fees.
The School Board appealed. Defendants answered the appeal praying that the judgment be amended by increasing the award to $31,000.00 and by allowing legal interest thereon from September 13, 1965 until paid.
The issues are:
(a) The fair market value of the property taken.
(b) Is the fair market value “just and adequate compensation” for the taking?
(c) From what date should interest on the award be allowed ?
*413 (d) Is the sum allowed for expert fees excessive?
(a)
The record reflects that the subject property is in a neighborhood which has changed from 100% white to 100% negro in the past ten years. Its highest and best use is for rental to negro tenants of the upper middle class, or a combination of owner occupancy and rental of apartments to assist the owner in amortizing a purchase-price loan. There being a scarcity of adequate negro housing in the city the rental apartments are in steady demand.
Two expert appraisers, Messrs. Max J. Derbes, Sr. and L. X. Lamulle, testified on behalf of the School Board. These two experts made a joint study of the property and rendered a joint report to the School Board in which they jointly appraised the subject property as having a fair market value of $18,500.00.
Defendants adduced the expert testimony of Mr. James M. Maloney, Jr. and Mr. Omer F. Keubel. These two appraisal experts make independent studies of the property and filed separate and independent reports. Mr. Maloney concluded that the property had a fair market value of $23,-000.00. Mr. Keubel fixed its value at $24,-000.00.
The School Board experts based their study on four comparables placing most reliance on two of them viz. 2219-21 General Taylor Street and 2404-06 Marengo Street and used the income approach in arriving at their appraisal. They concluded that in this neighborhood a double house will sell at a price based upon a gross annual income of 12% to 14% of the price, and that a three or four apartment house will sell at a price which will yield a gross annual income of 15%. In other words an investor would not, in their opinion, be interested in buying in this neighborhood unless he is assured of getting a 12% to 15% gross annual return on his money. They testified the subject property could not be sold for a price higher than that which would yield a gross annual return of 14%; and since the subject property earns only $2,-580.00 gross rental per year it would not sell for a greater price than $18,500.00.
Mr. Maloney, testifying on behalf of the defendants, used three approaches to the problem, i. e., the comparable sales method, the reproduction cost method and the income capitalization method.' He referred to six comparables the recorded sales prices of which indicated to him that the subject property had a sales value of $22,500.00 to $23,500.00 and concluded that its fair market value was $23,000.00. By using the reproduction cost method Mr. Maloney arrived at a value of $24,000.00 for the property which he considered its upper limit of value. Using the income capitalization approach Mr. Maloney stated in his report: .
“A study of the sales and rentals in this area indicate to me that a gross return of 11'% is sufficient to attract capital to the property.
“Applying 11% to the gross potential rent gives an indicated value by capitalization of $23,454.00.”
From a correlation of all three valuation methods used by him Mr. Maloney concluded that the fair market value of the property was $23,000.00.
Mr. Keubel, testifying for the defendants, rejected the income capitalization approach having found from ten comparables which he used that the income yielded was not sufficiently stabilized or predictable to form the basis of an appraisal. He also rejected the reproduction cost method of appraisal “because of the advanced deterioration and obsolescence, and the measure of depreciation is indeterminable.”
■ Mr. Keubel based his appraisal on sales data especially the unit room value as reflected by his ten comparables, especially his comparable number four (2219-21 *414 General Taylor Street). He concluded that the fair market value of the property in the neighborhood was $1,500.00 per room, and that the fair market value of the subject property was $1,500.00 per room for the subject’s sixteen rooms, or $24,000.00.
Counsel for the School Board notes that the Trial Court stated in his “Reasons for Judgment” that “ * * * the best approach to a determination of the fair market value of the subject property is by room value * * Counsel therefore concludes that the Trial Judge gave extraordinary weight to the testimony of Mr. Keubel. He then calls attention to what he contends is an error committed by Mr. Keubel in his room count.
Counsel notes that in arriving at a valuation of $1,500.00 per room Mr. Keubel laid particular stress on his comparables numbers four and eight. Keubel’s comparable number four is the property situated at 2219-21 General Taylor Street which was used by all of the experts. The sales price of this comparable was $20,500.00. Mr. Keubel’s report shows that it contained sixteen rooms which indicated a unit price of $1,281.25 per room, which adjusted 115% indicated $1,473.43 per room for the sixteen rooms of the subject property or a total valuation of $23,574.80.
Counsel notes however that the joint report of Messrs. Derbes and Lamulle shows that Keubel’s comparable number four contains eighteen rooms instead of sixteen and that Mr. Maloney’s report gives it twenty rooms. Obviously if this comparable contained eighteen rooms the value per room would be less than that determined by Mr. Keubel. And if it contained twenty rooms as shown by the Maloney report the value per room would be even less. There is nothing in the record which clears up this discrepancy in the three reports, but it is fair to assume that Mr. Keubel’s count of sixteen rooms is probably correct since he was the only expert particularly interested in the room count. The other experts merely referred to the number of rooms in their general descriptions of the com-parables. Moreover Mr. Keubel’s comparable number eight (2020-22 General Taylor Street) which was not used by any of the other experts shows a room value of $1,567.00 per room.
Counsel for the School Board also directs our attention to the fact that in discussing one of his comparables (number two) Mr. Maloney made an error in addition when he totalled the rent received for three rooms at $144.00 per month instead of $164.00. The figure which Mr. Maloney used showed that this comparable produced a gross return of 11.7% of its sales price, whereas if he had used the correct figure it would have shown that this comparable had a yield of 12.6%. However this was only one out of the six comparables which Mr. Maloney used in arriving at his conclusion that the subject property would sell at an 11% gross return.
The Trial Court stated that in arriving at the sum of $23,200.00 as the fair market value of the subject property he gave due weight to the testimony of all of the experts and to their studies of the comparables upon which they relied, and we feel sure that he did. The valuation of property is a factual determination and the finding of the Trial Court should not be disturbed in the absence of manifest error. See State of Louisiana through the Department of Highways v. Ragusa, 234 La. 51, 99 So.2d 20; State of Louisiana through the Department of Highways v. Gielen, La.App., 184 So.2d 737-739; State of Louisiana through the Department of Highways v. Cenco, Inc., La.App., 187 So.2d 162, 164; State of Louisiana through the Department of Highways v. Jacques, La. App., 197 So.2d 414; City of New Orleans v. Wiener, La.App., 197 So.2d 685. After carefully analyzing the written reports and the testimony of the experts we fail to perceive any manifest error in the Trial Court’s finding with regard to the fair market value of the subject property.
*415 (b)
Counsel for defendants does not contend that the Trial Court erred in finding the fair market value of the property to be $23,200.00. What he contends is that the award of this amount to the defendants would not be “just and adequate compensation” (see Constitution, Article 1, Section 2) for their property. He contends that just and adequate compensation would require an award of $31,000.00, such sum being an amount which invested at 4i&% would produce an annual income approximately equal to the net annual rental the subject property was producing at the time of the taking.
Counsel contends that defendants are entitled to be put in as good position pecuniarily as they would have been if the property had not been taken, and contends that while “fair market value” may under certain circumstances equate “just and adequate compensation” it is not always so.
In United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, (cited by counsel) we find the following statement regarding the “just compensation” required by the Fifth Amendment to the Federal Constitution:
“Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken.
“It is conceivable that an owner’s indemnity should be measured in various ways depending upon the circumstances of each case and that no general formula should be used for the purpose. In an effort, however, to find some practical standard, the courts early adopted, and have retained, the concept of market value * * *” (emphasis supplied)
In Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295, we find the following statement, which is quoted with approval in State of Louisiana through the Department of Highways v. Barrow, 238 La. 887, 116 So.2d 703:
“The general rule is that the measure of compensation to be awarded the owner in expropriation proceedings is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy — in other words the market value of the property. There are exceptions to this rule. In cases where there is no market value for a residence sought to be expropriated, the intrinsic value, or its value to the owner, must be taken into consideration; otherwise he might be deprived of his property without just and reasonable compensation. The compensation to which the owner is entitled is the full and perfect equivalent of the property taken. — -in other words, the loss caused to him by the taking. ‘This means substantially that the owner shall be put in as good position pecuniarily as he would have been in if his property had not been taken.’ 18 Am.Jur. § 240, p. 874. This is the rule established long ago and consistently adhered to by the Supreme Court of the United States.”
The general rule stated in Green, supra, is well established in our jurisprudence.
We find no reason to hold that the instant case presents an exception to the general rule set forth therein. The fair market value of the property was ascertainable and has been determined and this is the price which defendants might expect to receive if they were willing to sell to a purchaser willing to buy.
What defendants are asking is that they be awarded an amount which under a different and perhaps safer and more permanent form of investment would produce the same amount of revenue which was being produced by a property subject to deterioration, obsolescence and casualty. An award of such an amount would in our *416 opinion exceed the just and adequate compensation to which they are entitled.
(c)
The Trial Judge allowed 5% interest on the award from February 24, 1966 until paid. In this connection the Court said:
“By stipulation of the parties it is established that during the first week in January of 1966, plaintiff began to demolish the buildings it had acquired in the square in which the property herein involved is located. Uncontradicted evidence established that because of this activity defendants’ premises became uninhabitable, causing a gradual loss of rent which became total as of February 24, 1966. The total rental immediately theretofore collected by defendants amounted to $215.00 per month. This loss of rents constitutes damage for which defendants are entitled to compensation * * * The Court is also of the opinion that defendants should be compensated for loss of rents resulting from plaintiff’s activities in the square, for which the Court will allow legal interest on said sum of $23,200.00 from February 24, 1966, until paid, which will put defendants in the same position as they would have found themselves had they been paid before the loss of rent.”
The record reveals that as the School Board demolished the other buildings it had acquired in the square, vandals moved in causing defendants’ tenants to become frightened and to vacate the premises. If the School Board’s actions created a nuisance it may be that defendants have some claim against the School Board for damages ex delicto, as to which we express no opinion. We do not agree that defendants’ loss of rentals is an element to be included in the expropriation award. It is merely a consequential injury and falls in the category of damnum absque injuria.
“ * * * It is well settled that mere consequential injuries to the owners arising from disturbance or injury to business are damna absque injuria * * *” State of Louisiana through the Department of Highways v. Sauls, 234 La. 241, 99 So.2d 97. See also Housing Authority of Shreveport v. Green, supra; Sholars v. Louisiana Highway Commission, La.App., 6 So.2d 153; West’s Louisiana Digest verbo “Eminent Domain” &wkey;107.
Defendants are not entitled to be compensated for loss of rentals through an award of interest[1] or otherwise. However, they are entitled to legal interest on the award from date of judicial demand (institution of proceedings) until paid. See State of Louisiana through the Department of Highways v. Bahry, La.App., 129 So.2d 903; State of Louisiana through the Sabine River Authority v. Salter, La.App., 184 So.2d 783; Gravity Drainage District No. 1, etc. v. Key, 234 La. 201, 99 So.2d 82. See also 18 La.L.R. pp. 555, 556.
(d)
The School Board contends that the Trial Court’s award of $700.00 for each of defendants’ expert witnesses is excessive and suggests that a fee of $400.00 for each of them would be proper. The record reveals that Mr. Maloney’s field study and the preparation of his report required two weeks of his time. In addition thereto he spent two days in Court. Mr. Keubel’s field study and report required 40 hours of his time and 14 hours of his assistant’s time. In addition thereto Mr. Keubel spent 1(4 days in Court.
The fixing of expert fees lies within the sound discretion of the Trial Court and should not be disturbed unless clearly erroneous. Central Louisiana Electric Company v. Williams, La.App., 181 So.2d 844; White v. American Em *417 ployers’ Insurance Company, La.App., 179 So.2d 542; Bryant v. Hartford Accident & Indemnity Company, La.App., 158 So.2d 263. We do not find that the amount allowed by the Trial Judge is clearly erroneous or that he abused his discretion in this regard.
For the foregoing reasons the judgment appealed from is amended by allowing legal interest on the amount awarded defendants from date of judicial demand until paid, and as so amended and in all other respects the judgment is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Amended and affirmed.

. As a matter of fact the interest allowed by the Court ($96.66 per month) fails to compensate for the loss of rentals ($215.00 per month).