GLADNEY, Judge.
The Department of Highways instituted this action on April 2, 1964 under the provisions of LSA-R.S. 48:441, et seq. to expropriate additional right of way to convert U. S. Highway 71 into a four lane highway, the project extending within the corporate limits of Bossier City. It deposited into the registry of the court $20,-810 as total compensation. The property owner, Joseph R. Mason, and Pan-Am Southern Corporation and American Oil Company, named defendants, answered, each denying the adequacy of the compensation deposited. After joining issue Pan-Am Southern Corporation, lessee and its assignee, American Oil Company, did not further contest the action and neither has appealed. After trial, which was begun on May 26, 1966, Mason was awarded a total of $46,678, which sum included $9,-645 for land and improvements and $37,033 for severance damages, all subject to credit of the deposit. Mason has appealed and the Department of Highways has answered the appeal.
The taking involved a strip of land adjacent to the highway along the front of Mason’s property measuring 10 feet in width by 550 feet in length. Before the expropriation Joseph R. Mason owned 2.36 acres of land, together with buildings, appurtenances and other improvements thereon, lying along and fronting the west right of way line of U. S. 71, some 2 or 3 blocks south of the Barksdale Air Force Base West Gate in Bossier City, Louisiana. Barksdale Air Force Base property lies east of the right of way line of said highway. U. S. 71 then was a two lane, cement base stretch running generally in a north-south direction. Mason’s property was trapezoidal in shape, being 550 feet on its east line parallel to the highway; 572.72 feet on its west line; 96.12 feet on its north line; and 279.07 feet on its south line.
When the case was tried the property was improved with certain business rental units with the exception of a motel which was operated by Mason and his wife. These consisted of: (1) a service station leased to the Pan-Am Southern Corporation and assigned by it to American Oil Company providing for a rental payment of $225.75 per month, plus a commission of 1% cents on each gallon in excess of 15,-000 gallons per month; (2) the Satellite Lounge rented to Edward J. Skibba for $200 per month plus a 5% commission on gross receipts above $36,000; (3) the Cajun Kitchen property rented to George F. Dement for $250 monthly; (4) the Duchess Beauty Parlor property formerly rented for $150 per month; and (5) Kilmer Real Estate Agency property was rented to F. M. Kilmer for $100 per month. The contracts between Mason and the lessees of (2), (3), (4) and (5) were not in writing.
The deposit of $20,810 was itemized as follows: $6,765 for land; $1,950 for concrete surfacing; $190 for asphalt surfacing; $30 for concrete curbing, and $3,875 for signs, a total of $12,810 for land and improvements within the taking. As to these items the court increased the compensation for land to $7,315 and concrete surfacing to $1,965. It also added $175 for gravel. It deducted, however, the sum of $3,875 for signs and eliminated a $30 item in the deposit for concrete curbing. The amount awarded by the court was $9,645. The additional sum in the deposit of $20,810 included $8,000 for severance damages. The “cost to cure” method of relocating the outer pump island was compensated by $2,000. The court .increased this item to $4,803. Also included in the $8,000 was $6,000 for estimated rental loss income by the reduction of parking space *332 serving- the real estate office and beauty-parlor. The trial court increased the loss of rental income value to the sum of $32,-230, taking into consideration all of the rental properties and the motel.
Appellant Mason, who in his answer demanded $131,257 in total compensation, complains that the court erred: (1) in denying recovery by him of the fair market value of certain signs; (2) in rejecting his claim for the cost of restoring the service station on a “cost to cure” basis; (3) in rejecting his claim for full severance damages to the motel property; and (4) in rejecting his claim for the full measure of severance damages to the entirety of the property. In brief he contends the award of $9,645 made by the trial court for land and improvements taken should be increased by the sum of $3,875 for signs and the amount of severance damages be increased and fixed at the sum of $105,205.
The Department of Highways argues that except for the damage to the outside pump island, only twelve inches of which was actually within the taking and which involves removal and relocation of the pumps, and except for loss of some parking area adjacent to the real estate and beauty parlor rental units, defendant has sustained no severance damages beyond the $2,000 for the “cost to cure” relocation of the outside pump island and $6,000 for the loss of parking space serving the real estate and beauty parlor rental units. It further contends that Mason has failed to show loss of rental income value affecting the service station, motel, and the restaurant and lounge by reason of a diminution of parking facilities.
We agree with the court’s award of $7,350 for the land alone. This amount was found by increasing the value per square foot from $1.23 to $1.33, and is sustained by sales of comparable properties. We likewise affirm the award of $4,803 in using the “cost to cure” method of relocation of the outer pump station. This item was reached after a job estimate by a contractor, whereas other evidence appears of less probative value. The court’s dis-allowance of $3,875 for the signs was prompted by the fact that Mason regained possession thereof by securing permission from a contractor who was about to demolish the same. Undoubtedly title to the signs vested in the state after the deposit was made; and perhaps the state may still retain its title but we feel it is not our duty to order Mason to return the value of the signs.
The trial court allowed the sum of $32,-230 as severance damages resulting from a loss of parking space based on loss of rental income. To substantiate the claim appellant’s appraisers employed the income approach based upon estimated loss of rental income.
Appearing on behalf of appellant were three real estate appraisers: O. L. Jordan and Lawrence L. May of Shreveport and A. C. Montgomery of Bossier City. The Department of Highways was represented by O. W. Dean and Roy W. Fulco. All of these expert witnesses were highly qualified and experienced.
The loss of right of way parking to a commercial establishment may be com-pensable as severance damages. In which case the proper method of estimating the severance damages is by considering either diminution in value and lack of adequate parking space or the cost to cure the injury. State through Department of Highways v. Leger, La.App., 170 So.2d 399 (3rd Cir. 1965) ; Department of Highways v. Puckett, La.App., 207 So.2d 212 (1st Cir. 1968).
The so-called income approach based on loss of rental income for the purpose of determining such severance damages as resorted to herein consists of capitalizing the average annual anticipated amount of rent income which might be lost by the defendant on his business units, multiplied by the estimated life of the buildings, and divided by an estimated percentage rate of return to produce interest, recapture the invest *333 ment, and provide for the administration of the property. The capitalization rate so used varied from 12.67% to 8%-. The theoretical and conjectural nature of the testimony of some of the experts is evidenced in their use of an estimated potential gross annual revenue of the motel of $81,-500. The court commented on this speculative figure. The record contains the testimony of Mrs. Mason who gave the annual gross receipts for the income of the motel for the years 1961, 1962, 1963, 1964 and 1965 as $73,370.21; $74,773.22; $74,-223.02; $73,318.02, and $71,927.30, respectively. The court observed:
“In fact, except for the figures showing a loss of income on the motel and a reduction in the gallons of gasoline delivered to the service station, there is no concrete evidence of an actual loss of income to the defendant. It is true that the operators of the lounge and restaurant testified their business had declined and they gave a percentage, but they were still renting and rental had not been reduced as far as this Court could determine * * * ”
The court concluded that an estimated reasonable amount of anticipated reduction in rental to the defendant would be an average annual loss of 10%- of the income on all of the rental property. Using this factor it found that there had been an annual loss by the rented businesses of $1,723 and an average loss of income of $1,500 for the motel. Combining these two figures for a total of $3,223 the court capitalized this sum at 10% according to the formula above set forth and arrived at the severance loss of $32,230. To this was then added $4,803 as the estimated damage for correcting the service station property by moving the pump island and signs, and so forth. Thus, the court arrived at a total of $37,-033 as severance damages and $9,645 for the land and improvements taken.
Figures affecting actual revenue were available only as to the operation of the service station and motel. It is conceded that any severance damage arising from a loss of rental income by the service station considered inconclusive. Evidentially other pump island. However, only the gallonage record was tendered in evidence. It showed an average monthly output of 16,648 gallons of gasoline for 1964 and 13,394 gallons for the year 1965. This evidence covered records for all months in 1964 and 1965. Also furnished were the records for the first four months of 1966 which we considered inconclusive. Evidentially other contributing factors were at work such as competition, management, etc. Seemingly indicative of such causes, in the month of April, 1966, the pumps produced 16,175 gallons and in the month of February, 1966 produced only 7,766 gallons.
Turning to the alleged loss of rental income of the motel, we find the actual gross receipts for the first four months of 1962 were 9%' more than the year 1963; in 1963 4% more than the year 1964; and in 1964 3% less than the gross receipts for the year 1965. The gross income for the year 1965 was 98.4% of the 5 year average 1962 to 1965 and the gross annual revenue for the year 1965 was approximately $2,800 less than the high gross annual revenue for the year 1962. Therefore, we find a trend in which the revenue of the motel began to decrease prior to the expropriation proceeding brought in April, 1964. During the same period the business rental units maintained their same rental payments.
We are of the opinion that defendant has failed to prove that the taking of the strip fronting on his property has been a substantial or discernable factor in the diminution of the motel revenue nor has the taking adversely affected the rental value of the business units.
In the application of the law of eminent domain our jurisprudence recognizes that the owner of property involved in condemnation proceedings is entitled to be compensated for its market value and the courts will endeavor to place him in as good a position pecuniarily as he would *334 have been if the property had not been taken. Also it is established law that when only a part of the property is taken and damage is caused to the remainder, the owner is entitled to the resulting damages as severance damage. There the measure of the award is determined by arriving at the value immediately before and after the expropriation. When application of this rule is not available other acceptable methods may be employed. In measuring consequential damage, however, damages must not be anticipated or be too remote and speculative. Injuries from discomfort and disturbances to the owner or to business are not recoverable. It is encumbent upon the owner to prove to a reasonable certainty the damages claimed. City of Alexandria v. Jones, 236 La. 612, 108 So.2d 528 (1959); State through Dept. of Highways v. Barrow, 238 La. 887, 116 So.2d 703 (1959) ; State, through Dept. of Highways v. Madden, La.App., 139 So.2d 21 (2nd Cir. 1962).
The judgment of the trial court awarded $9,645 for the property taken and $37,033 for severance damage, or a total of $46,678. The judgment is amended to allow $13,550 for the land and improvements taken and the sum of $10,803 as severance damages, or a total of $24,353 subject to the deposit of $20,810. As so amended, the judgment is affirmed.